### PEARSON
v.
### CENTRAL ILL. LIGHT CO.
No. 10897.

United States Court of Appeals
Seventh Circuit.
Feb. 19, 1954.

Ralph M. Snyder, Chicago, Ill., for appellant.

Roy H. Olson, Richard R. Trexler, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff claimed infringement of Claims 32 and 33 of Patent No. 2,254,-493 [1], issued to plaintiff September 2, 1941, on application filed August 19, 1931. The district court held that Claims 32 and 33 were void for the following reasons: lack of invention over the prior art, double patenting, and because of delay in claiming after commercial use of the subject matter. The court also found non-infringement and that plaintiff's suit was barred by laches. The district court did not hand down an opinion, but approved and adopted the findings of fact and conclusions of law submitted by defendant.

Pearson Patent No. 2,254,493 relates to synchronizing apparatus and systems, and is used principally in unattended hydro-electric stations and unattended substations. In alternating current power lines the current surges first in one direction and then in the opposite direction, at a given frequency, usually 60 cycles per second. As the demand on the power circuit increases, such as when the evening lighting load comes on, it is often desirable to add another generator to the line. In order to connect such lines without damage, they must be in substantially the same phase coincidence. It is the function of an automatic synchronizer to close the circuit connecting the incoming generator to the line when its frequency and phase relations substantially match those of the system to which it is being connected. Three things are required: (1) the frequency must not differ by too great an amount; (2) the phase must be the same (current in both circuits pulsing at peak amplitude in the same direction at the same

---

1. "32. In a control system, the combination with a switching device for interconnecting two alternating current sources, of an automatic synchronizer for controlling said device, said synchronizer comprising a synchroscope motor supplied with power from said sources, a rotatable member supported on the shaft of said motor and driven thereby if the frequency of one of said sources is higher than the frequency of the other source, means carried on said rotatable member for initiating the operation of said switching device, an auxiliary control member, a pivot for supporting said control member independent of said shaft, means including said rotatable member for moving said control member on said pivot, and means including said control member cooperating with the said means carried by said rotatable member for causing the operation of said device to be initiated in advance of phase coincidence.

"33. In a control system, the combination with a switching device for interconnecting two alternating current sources, of an automatic synchronizer for controlling said device, said synchronizer comprising a synchroscope motor supplied with power from said sources, two relatively movable members, one of which is rotated by the shaft of said motor if the frequencies of one of said sources is higher than the frequency of the other source, means independent of said shaft for pivotally supporting the second of said members, means including the first of said members for moving the second member on its pivot, a circuit for initiating the operation of said device, and means including a part carried by the first of said members and a part carried by the second member cooperating therewith for causing said circuit to be closed in advance of phase coincidence."

time); and (3) it is desirable that the automatic synchronizer, upon sensing the proper time for action, initiate the closing of the circuit breaker a predetermined time interval in advance of phase coincidence, so that the circuit breaker will have time to complete its action when exact phase coincidence is reached.

In the patent in suit, in defendant's structure, and in the prior art references relied upon, a synchroscope is a part of the automatic synchronizer. A synchroscope is a device generally like a motor. When the stator is connected to one of the two power lines to be connected and the rotor is connected to the other, the synchroscope armature shaft and pointer will rotate at a speed corresponding to the frequency difference between the two lines, and in the direction of the higher frequency. For example, if one line has a frequency of 60 cylces per second and the other line has a frequency of 58 cycles per second, the synchroscope pointer will rotate with a frequency of 2 cycles per second. Each time the phase of the two lines reach coincidence, the synchroscope pointer will be in a predetermined or "12 o'clock" position.

From 1931 to 1933 plaintiff and Arthur Perry Peterson were in business together in Minneapolis, Minnesota, selling automatic synchronizers. The companies were known as Pearson Electric Company and later General Controls Corporation, and they operated under patent licenses from Pearson. Differences between Pearson and Peterson arose, and the former terminated his license held by the Minneapolis company. Pearson moved to Chicago and formed a new corporation called General Control Corporation. The Minneapolis company continued under the guidance of Peterson as General Controls Company, but later changed its name to Control Corporation. Both companies continued to manufacture and sell automatic synchronizers and were in competition on bids for various jobs.

In 1936 both companies bid on the same job for the substations operated by the Wisconsin Power and Light Company at Fox Lake, Wisconsin, and Fond du Lac, Wisconsin. Pearson proposed his standard mechanical contact equipment, and Peterson proposed a photo-electric synchronizer. Pearson's associate wrote a letter to the power company mentioning patents and the previous history of the two companies. Some correspondence ensued between the company and Pearson's company, the latter suggesting that the device and equipment of the Minneapolis company might be within the scope of the Pearson patents. On July 23, 1936, Pearson's patent lawyer wrote the power company that he would require further information before giving a "conclusive opinion as to the precise claims that we feel will be infringed." Apparently no further correspondence was had on the subject.

Plaintiff argues that the patent in suit introduced for the first time provision for closing the circuit slightly in advance of phase coincidence and emphasizes that the action was always positive by reason of an independently mounted pivot member. Plaintiff testified that the installation of his device at Fond du Lac in 1931 was the first successful attempt to synchronize two power systems in advance of phase coincidence.

Defendant's structure which discloses a photo-electric closing mechanism was installed at Sycamore, Illinois, in 1936 but plaintiff insists that he first saw same in May of 1948. A brochure showing defendant's construction was issued generally to the trade on July 7, 1937, but plaintiff testified that he first saw same in 1947 when a friend gave him a copy. Plaintiff testified that he had seen a partial disclosure near Gary, Indiana, in 1946, but stated he was unable then to learn the details of the construction.

The disclosure of Pearson Patent No. 2,254,493 is quite involved, and difficult to explain without reference to the drawings. However, it shows a synchroscope shaft, the speed and direction of rotation of which is determined by the frequency differences between the circuits to be connected. The shaft carries

a contact drum which in turn carries several contacts thereon cooperable with four contact wheels. If the speed of rotation is too great so that damage might result if the circuit connecting switch were closed, the elongated switch on the drum will not make contact with the roller contact for a sufficient length of time to actuate the slow-acting relay associated therewith. However, when the frequency difference is within the permissible closing range of the synchronizer, the contacts will remain together long enough to operate the slow-acting relay and condition other parts of the circuit for operation.

The district court found that Claims 32 and 33 of the patent in suit are limited to a mechanical contact, fixed angle advance machine and cannot be construed to cover defendant's photo-electric, variable angle advance synchronizer.

There is no doubt that Claims 32 and 33 in the light of Fig. 1 of the patent in suit show such claims are limited to mechanical roller electric contacts. Also, we think the evidence clearly supports the finding that such claims are limited to a fixed angle advance machine. Plaintiff himself so testified, and so did his expert witness.

We think it clear that defendant's structure is a variable advance angle machine. In defendant's device, a light aluminum disc, with an aperture therein, is mounted on a shaft of a synchroscope motor. The speed with which the disc rotates is proportional to the prevailing frequency difference. Bridging the disc, and over the top thereof, is a swinging magnet which will swing in the direction of the rotation of the disc, the amount of the swing being proportional to the speed of the disc. The magnet puts a drag on the rotation of the disc; the greater the speed of the disc rotation, the greater the magnetic drag. A vane containing an aperture is attached to and hangs down from the magnet. When the disc is stationary or revolving at a very slow speed the vane hangs vertically. As the speed of the disc increases the vane is pulled to one side or the other.

An exciter lamp and focusing lens is located opposite the aperture in the vane. When the aperture in the vane and the aperture in the disc are in alignment, a shaft of light goes through same and strikes a photo-electric cell which initiates the closing of the circuit. If, however, the disc is revolving at a rapid speed, the vane is pulled over behind a screen so that the light from the exciter lamp will not shine through.

In a fixed advance angle machine like the patent in suit, there is the same fixed angle advance closing under all circumstances, and completion of the circuit will take place at exact phase coincidence only for one particular frequency difference. At other times the closing approximates phase coincidence. By contrast, in a variable advance angle machine the circuit will be closed at exact phase coincidence regardless of the particular frequency difference which may be in effect when the closing takes place. To illustrate: if the frequency difference is 2, each 360 degree revolution of the synchroscope pointer takes $\frac{1}{2}$ second; an advance phase angle closing of 36° would leave $\frac{1}{20}$ second for the circuit breaker to operate. If the frequency difference is 4, then the synchroscope is rotating twice as fast, and an advance phase angle closing of 72° would be required to obtain the same $\frac{1}{20}$ second time interval. In defendant's device the advance angle closing gets correspondingly smaller with the frequency difference, approaching phase coincidence as the frequency difference approaches zero. The district court was correct in finding that the defendant's structure was a variable advance angle synchronizer.

In urging non-infringement, defendant lays much emphasis on the fact that it utilizes a photo-electric device for closing in contrast with the mechanical electric contacts used by Pearson. We do not consider this difference to be important on the question of infringement. A photo-electric closing mechanism is not one of the elements of either Claim 32 or Claim 33. In fact, plaintiff makes no claim whatsoever to a photo-electric

synchronizer. That device in defendant's structure is merely a source of energy for effecting the closure. In Pearson the energy is afforded by electric current flowing through contacts set up by the mechanical parts. However, we think that the difference between fixed angle advance closing and variable advance angle closing is so vital to the devices that it demonstrates defendant's structure did not infringe the claims in suit.

Kennedy Patent No. 1,680,739 is the principal reference relied on by defendant. On August 5, 1940, Arthur Perry Peterson filed an application for a patent, Serial No. 351,463, which covered defendant's structure. The examiner cited Kennedy as the principal reference against the application. Peterson concluded that his claimed invention was substantially anticipated by Kennedy, and he abandoned his application. Each element of defendant's structure finds its counterpart in Kennedy.

In this court plaintiff places great emphasis on an element in each claim to show invention over the prior art. In Claim 32 it is "a pivot for supporting said control member independent of said shaft"; in Claim 33, "means independent of said shaft for pivotally supporting the second of said members." It is doubtful that plaintiff considered the independently mounted pivot important in the district court. At least the record is devoid of any testimony or other showing that there is any virtue or patentability in this arrangement.

Plaintiff now argues that the fixed member, mounted independently of the shaft, improves the accuracy of the device and is not subject to distortion caused when mounted on the moving shaft. This may well be, but proof thereof is lacking. There is no evidence to show that this feature had anything to do with the success or non-success of the prior art, or of the success, such as there has been, of plaintiff's device. The argument of plaintiff's counsel that advantageous results follow the independent mounting cannot be a substitute for proof of that contention.

We think the district court was correct in finding the claims in suit are invalid as defining no invention over Harris No. 1,546,070. Plaintiff argues that in Harris there is no specific disclosure of advance angle closing. It is true that the specification does not state the circuit is closed "in advance," but it does state that the closure occurs "when the phase relationship is right." Further, the drawings disclose that there is a fixed angle advance closing. Both Harris and the patent in suit function in the same way. Therefore, Claims 32 and 33 do not define invention over Harris.

We also think the district court was correct in finding that if Claims 32 and 33 are construed as applicable to defendant's structure, they are anticipated by Kennedy No. 1,680,739.

We also agree with the district court that plaintiff's action is barred because of laches. After Pearson left Peterson in 1934 he knew the latter was continuing to manufacture automatic synchronizers, for they bid on the same jobs. In 1936 in correspondence with the Wisconsin Power and Light Company plaintiff made a general charge of infringement against defendant; and in the same year his patent attorney wrote that he would require further information for a "conclusive opinion as to the precise claims that we feel will be infringed." It is quite unbelievable that plaintiff did not know the details of defendant's device after its brochure was published in 1937, and thereafter distributed to the trade. The field of automatic electric synchronizers was a restricted one. We think it was a reasonable inference for the trial court to draw that either plaintiff did have knowledge of the details of defendant's device as early as 1937 or 1938, or should have been put upon inquiry. As was stated in Johnston v. Standard Mining Co., 148 U.S. 360, 370, 13 S.Ct. 585, 589, 37 L.Ed. 480: " * * * the law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already

known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."

We do not reach the other points advanced by the defendant. The judgment of the district court is affirmed.