McGILL v. WHITEHEAD & HOAG CO.

(Circuit Court, D. New Jersey. April 29, 1905.)

1. PATENTS—VALIDITY AND INFRINGEMENT—SCARF PIN.

The McGill patent, No. 285,641, for a scarf or tidy pin or stud, is void for lack of patentable novelty, in view of the prior art. Also construed, and, as narrowed by the amendment of the claim in the Patent Office to meet objections of the examiner, *held* not infringed, if conceded validity.

2. SAME—CONSTRUCTION OF CLAIMS—ESTOPPEL.

Where a patentee, with knowledge of a device made by defendant, made no claim of infringement for five years, he will be held estopped to thereafter place a different construction on his patent, just before its expiration, for the purpose of making out a case of infringement.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 468, 469.]

In Equity. On final hearing.

Ewing, Whitman & Ewing, for complainant.

Andrew Wilson, William A. Jones, and Howard P. Denison, for defendant.

CROSS, District Judge. The complainant, George W. McGill, filed his bill of complaint against the defendant, the Whitehead & Hoag Company, alleging infringement of certain letters patent of the United States, issued to him September 25, 1883, and known as No. 285,641, and asking that the defendant might be enjoined from making and selling the invention therein set forth and claimed, and also asking for an accounting of the gains and profits made by the defendant from the manufacture and sale of such patented article, and that he might be decreed to pay to the complainant the damages sustained by him by reason of such alleged infringement. The patent referred to claims to embrace certain "new and useful improvements in the construction of scarf and tidy pins, studs, and such like articles."

The complainant, in his application for said patent as originally filed, set out but one claim, as follows:

"A pin or stud, consisting of a single piece of wire pin-pointed at one end and fashioned to form the single shank, b, and loop, a, in combination with a metal cap, A, closed upon the loop in manner substantially as herein described, for the purposes specified."

This claim was rejected by the patent examiner, for the reason that the same lacked novelty, and was embraced in a previous patent issued to complainant January 3, 1882, numbered 251,912. Upon such rejection the complainant amended his claim to read as follows:

"A pin or stud consisting of a pin-pointed shank, b, having an angular neck, a', and a closed loop, a, of the form of the metallic cap, made of one continuous piece of wire, in combination with such cap, which is upset or closed over the looped head, substantially as set forth"—

And it is in the above form that the patent was ultimately issued.

It will be noticed that but two changes which can be called material appear between the original and the amended or final claim.

These are denominated as the "angular neck" and the "closed loop." The former consisted of a shoulder or angle in the pin-pointed wire to allow for the thickness of the cloth or other material in which the pin might be inserted, so that, when the pin was fully inserted in cloth or other material, it would permit the head of the pin to lie flat against it. It was to all intents and purposes like the angle or shoulder which appears in the ordinary scarf pin, and, although the expression did not in terms appear in the original claim, it cannot be said to be new, for it was substantially mentioned and described in the original specifications and drawings, and consequently could not have formed the basis upon which the patent was finally allowed, and, furthermore, it appeared distinctly in the earlier patent issued to the complainant, and which was referred to by the examiner as No. 251,912. It would seem, therefore, necessarily to follow, that the material change in the amended claim, and the one which influenced the issuance of the patent, was the term "closed loop," which appears twice in the amended claim, and concerning which the parties differ in their construction. On the part of the complainant, it is maintained that the phrase has the same meaning in both of the places in which it is used, and in support of their position they say that, in the place where first used, "closed" means, as applied to the loop, "closed in," or inclosed by, the folded-in edge of the cap. The defendant, however, claims that the word "closed" is used in two different senses in the amended claim, and that, as applied to the loop in the first instance, it means a closed or shut or fully formed loop, something equivalent to a circle, although not necessarily of that form. As to its use in the second place, both parties agree.

It seems to me that the defendant's contention is correct, and that the word "closed," as used, has two different meanings; that as used in the first instance it did not relate to the cap at all, but to the pin-pointed shank having a closed loop for its head, while in its second use it plainly refers to the cap which is to be crimped or closed over such "looped head." I regard any other construction as impossible. Such being the case, important results follow, for it appears that the defendant's alleged infringement consists in the use of a device similar to the complainant's, except in this one respect: that the loop forming the head of the pin-pointed shank is unclosed, and, instead of consisting of a fully formed loop, consists of but a segment or part of a loop. Upon a first glance this difference might seem unimportant, and under ordinary circumstances the adoption of the open loop by the defendant would probably have constituted an infringement of the complainant's patent. But in this connection it must be borne in mind that the complainant's original claim used simply the word "loop," without stating whether such loop was "closed" or "unclosed," and that in such form the claim was disallowed by the examiner, and thereupon the language was changed in the amended claim so as to read "closed loop," and that this modification was adopted to meet the objection of the examiner, or, at least, was adopted by the applicant with a view to manifest the novelty of his invention, which had

been disputed by the examiner. The use of the term "closed loop" undoubtedly narrowed the original claim, and by its use under the circumstances, the complainant has estopped himself from using an unclosed or open loop, and has himself established a difference in definition between "loop" and "closed loop." As just stated, the original claim was broader than the amended claim, and, whether rightly or wrongly, the original claim was objected to, and the complainant yielded to the objection, and cannot now be heard to object to a strict construction of the expression ultimately, and we must assume, carefully, chosen and adopted. In Brill v. Car Company, 90 Fed. 666, 33 C. C. A. 213, the Circuit Court of Appeals held:

"Where an applicant for a patent amends and limits his claims and specifications to meet the objection of the Patent Office, whether said objections were well founded or not, he is not entitled to the benefit of the original claim under the patent issued, nor to a construction making the amended claims as broad as those abandoned."

There is no closed loop found in the defendant's badges which are claimed to be an infringement of the complainant's patent. These badges are very familiar, and are constantly seen in the market, and are popularly known as "campaign" badges or pins. The defendant corporation, therefore, has clearly omitted one element of the complainant's patent, and, as a patent for a combination is not infringed by the use of any number of parts less than the whole, its act does not constitute an infringement of the complainant's patent.

In this connection it may be added that the complainant for a long time seems to have considered his patent as limited to a "closed loop." It appears from the testimony that for five years he knew that the defendant corporation was manufacturing and selling a similar device, except that it used an unclosed or partial loop; yet he neither brought suit to establish such infringement, until about a year before his patent expired, when this suit was instituted, nor did he in any other manner claim that the defendant was infringing his rights. It would seem, therefore, as if his conduct was susceptible of but one construction: that he did not consider defendant's device an infringement upon his. The principle adopted in Westinghouse Elec. & Mfg. Co. v. Wagner Elec. Mfg. Co. (C. C.) 129 Fed. 604, should therefore be adopted, and the complainant's claim of infringement be deemed an afterthought, and he himself estopped from asserting it.

Another matter appears in the record which, while perhaps not entitled to the weight of an admission, nevertheless does manifest a material lack of confidence on the part of the complainant in his ability to show that the manufacture by the defendant of its open loop badge is an infringement upon the complainant's patent in suit. The facts are these: After the institution of this suit, and after some testimony had been taken therein, the complainant purchased a junior patent, dated July 1, 1884, No. 301,083, and known as the "Bornstein Patent," and thereupon commenced a suit against the defendant in the Southern District of New York for an alleged infringement of that patent, and introduced in evidence therein, to show such infringement, the same exhibits introduced by him to

show infringement of his patent in suit herein. The Bornstein patent provides for a pin with an unclosed loop head sprung into a cap, and there held by the elasticity of the head, a device very similar to that used by the defendant. The grant of the Bornstein patent raised a presumption of novelty over the McGill patent in suit herein, and the complainant by his conduct would seem to have clearly recognized that the open or unclosed loop is not an infringement upon his patent.

What has already been said disposes of the case adversely to the complainant, but another view of the case may well be taken which reaches the same conclusion. I think the complainant's patent is invalid for want of novelty. Mr. Cox, an expert witness for the complainant, at one point in his testimony states that he finds in the claim upon which the complainant's patent was granted four elements: (1) A pin-pointed shank; (2) an angular neck; (3) a closed loop of the form of the metallic cap, made of one continuous piece of wire; and (4) a cap which is upset or closed over the looped head. Later in his testimony, however, he virtually admits that all of the elements except the "angular neck" are found in the alleged anticipations. His exact language is as follows:

"The specific element of the patent in suit which I do not find in the alleged anticipations is the angular neck."

And in another place he says:

"It would be impossible to pick any one element [in complainant's patent] and say that in itself it was entirely new; in my opinion, the novelty resides in the method or manner in which the cap and its pin shank are connected."

This testimony as to novelty is denied by the defendant's experts, and is overborne, in our judgment, by the other evidence in the case. The 1882 patent of the complainant, the Chess patent (1864), the Prentice patent (1882), the McCarthy patent (1873), the Robinson patent (1874), and the Duguen French patent (1880), and other patents offered in the evidence on the part of the defendant, clearly show every material element in the complainant's patent in suit, while several of them show such elements in combination so closely resembling the complainant's device as to negative any idea of novelty therein. As to the particular point referred to in the testimony of the complainant's expert above quoted, it may be added that the complainant's 1882 patent shows clearly, and others show but little less clearly, substantially the "angular neck" and method of uniting the cap and pin shank adopted by the complainant. Without going more into detail, it may be said that the language of Mr. Barkley, an expert witness for the defendant, fairly shows the state of the prior art at the time when the complainant filed his application. He says:

"To sum up: The foregoing examination of the state of the art shows that at the date of the application for the patent in suit, and, indeed, long prior thereto, it was a known thing to cover the heads of screws and nails with metallic caps whose edges or flanges were folded in or crimped against the metal of the head of the screw or nail to form a unitary structure; also that in some cases the nails or tacks were pin-pointed, or at least pointed.

Also said examination shows that long prior to the said date of application it was a known thing to form screws, button fasteners, buttons, rosettes, and pin-pointed button fasteners by bending a single wire into the desired shape, and especially to form a head thereon by means of a ring or loop at one end thereof, and to conduct the said ring or loop with the shank or stem or the like by means of an offset identical in function with the angular neck of the patent in suit; and also in many cases these rings or loops were covered with a cap secured in place in the same manner as the cap specified in the patent in suit. In at least one case the wire skeleton is held in place beneath an inturned edge or flange by its own elasticity (Robinson patent and Robinson fastener)." And, when asked, "In your opinion, does the patent in suit show any invention or improvement over the prior state of art?" answered, "The patent in suit shows nothing that is not shown in the prior art in substantially the same relations or combination."

In such opinion I concur. The bill of complaint will be dismissed.