**WESTCO-CHIPPEWA PUMP CO. v. DELAWARE ELECTRIC & SUPPLY CO. et al.**

**DELAWARE ELECTRIC & SUPPLY CO. et al. v. WESTCO-CHIPPEWA PUMP CO.**

**Nos. 4779, 4780.**

Circuit Court of Appeals, Third Circuit.

March 17, 1933.

George F. Scull, of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Arlon V. Cushman, of Washington, D. C., for defendant Decatur Co.

John J. Darby, of Washington, D. C., for defendants.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal and cross-appeal from a decree of the District Court, dismissing the complaint in a suit charging the defendants, Delaware Electric & Supply Company and Decatur Pump Company, with infringement of the reissue of United States letters patent No. 16,074, for a rotary pump, issued on May 19, 1925, to Adolph Wahle of Iowa. The original patent, No. 1,228,267, was issued to Wahle on May 29, 1917. The plaintiff was the exclusive licensee of Wahle until June 19, 1929, when Wahle assigned his patent to it. Suit was brought on July 9, 1929, against the Delaware Electric & Supply Company, a dealer in pumps, but the Decatur Pump Company, the manufacturer, intervened, and has assumed and conducted the entire defense. The defendants appellees will be referred to as defendant, meaning the Decatur Pump Company, and the appellant will be referred to as the plaintiff.

The reissue has twelve claims, the eight of the original patent and four others, but only claims 3 and 6 of the original patent are in issue. They read as follows:

3. "In a rotary pump, a casing having a passage extending circumferentially from a suitable inlet to a suitable outlet located adjacent thereon and having a circumferential slot in the annular transverse partition constituting the inner circumference of the same, of a rotor the axis of which is concentric to the center from which said axis is struck and which has an outer marginal portion which

extends through said slot into said passage and is provided with a series of buckets therein each having a substantially flat bottom inclining from the periphery to the side thereof at a point adjacent said annular partition and separated by transverse blades."

6. "In a rotary pump, a casing consisting of two circular sections, one of which has a cylindrical rim projecting from its transverse web, and an annular flange projecting from said web in the same direction as said rim and between the same and its axis and has a suitable inlet opening in said rim and a discharge opening therein adjacent thereto but separated therefrom by a transverse partition, and the other section of which closes the open side of said first mentioned section and has an annular flange projecting sidewise toward and is the same diameter as the annular flange of the other section, in combination with a shaft journaled in suitable bearings in the center of said first-mentioned section, and a rotor securely mounted thereon within said section and having its marginal portion extending between said annular flanges into the circumferential passage between said annular flanges and said rim and provided with a series of buckets therein each having a substantially flat bottom inclining from the periphery to the side thereof at a point adjacent said annular partition and separated by transverse blades."

The following defenses were interposed: (1) Invalidity of the patent; (2) noninfringement of the claims in issue, and (3) laches of the plaintiff in bringing suit.

The learned trial judge found the claims to be valid and infringed, but held that the plaintiff had been guilty of laches, and so refused an injunction and an accounting, and accordingly dismissed the bill of complaint.

The plaintiff appealed from that portion of the decree which sustained the defense of laches and the denial of an injunction, and the defendant appealed from that portion which held claims 3 and 6 valid and infringed.

We therefore necessarily have one question before us for decision, the validity of the claims. If they are held to be invalid, that disposes of the entire case, but, if they are valid, then one or both of the other two questions, infringement and laches, must be considered.

The patent relates to that class of rotary pumps which employs what is known as an overshot rotor. The pump comprises a casing and rotor as its principal features. In the ordinary rotary pump, water engages the buckets or blades only once, but in the course of the water through the passageway between the inlet and outlet of the casing, in the Wahle pump, it is repeatedly engaged by the buckets or blades of the rotor, and its pressure and velocity are thus and thereby constantly increased. This constitutes a new type of rotary pump. As the District Judge said: "While Wahle was not a pioneer in the sense of creating a new art, he was a pioneer in his class," not of creating a new centrifugal pump, but of creating "an entirely new type of such pump, having an entirely new mode of operation."

The mechanism, method, and principle of operation of the pumps of the plaintiff and defendant are fully set forth in the clear and comprehensive opinion of the learned District Judge. While there is some difference in the construction and location of the buckets in the two pumps, we think that the action of the rotor upon the water in both pumps is substantially the same.

Being an improvement substantially advancing the art, the patent should be construed liberally, Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U. S. 45, 63, 43 S. Ct. 322, 67 L. Ed. 523. and, when so construed, we are satisfied that, for the reasons set forth in the opinion of Judge Nields, the claims are valid and infringed.

This conclusion necessarily leads to the consideration of laches of the plaintiff in bringing suit.

In the decision of this question, there must be a balancing of equities. It is rather hard and seemingly unjust that any one should be allowed to infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it does not seem equitable for a person with full knowledge to sleep on his rights for seven years and thus lead another to think that he is safe in following his counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made large investments and built up a good business, punish him and innocent investors for doing what might have been prevented by timely action on the part of the patentee. Or, to state this in the language of the plaintiff, there are two elements in laches: (1) Lack of diligence on the part of the plaintiff; and (2) injury to defendant due to the inaction of the plaintiff.

When the reissue was granted, it contained four new claims, but the defendant is not charged with infringing any one of these.

So from 1921, or at latest early in 1922, the plaintiff knew that the defendant was infringing its original patent rights, and it is of the infringement of these rights that it is now complaining.

The plaintiff excuses itself for not proceeding before by saying that the application for reissue barred the action while it was pending. But assuming, without deciding, for there is inferential authority on both sides, that defendant could not sue on these claims while it was seeking a reissue of the patent, it had the option of either suing on the old claims in 1921 or 1922, or of trying to secure a reissue with broader claims. For reasons which it thought advantageous, it chose the latter, and should now abide by the consequences of its choice.

In May, 1921, Arthur W. Burks had completed his application for a patent under which defendant's pump is manufactured. In that month he went to Davenport, Iowa, to confer with representatives of the plaintiff, including its attorney, Lloyd Evans, Esq., about a position with plaintiff, and to submit to them his new invention. Mr. Evans thereupon told him that "what it covered he would get and it would keep the Decatur Pump Company from making the pump"; that is, what Burks' new development covered Evans would get for the plaintiff, which would prevent the Decatur Pump Company from manufacturing the defendant's pump under Burks' application, which was filed in the Patent Office the following month, June 1, 1921. Pursuant to what he told Mr. Burks, Mr. Evans, representing the plaintiff, applied for a reissue of the Wahle patent on January 23, 1922. This was granted on May 19, 1925, the original eight claims were retained, and four broader claims, 9, 10, 11, and 12, were allowed.

Manufacture under Burks' application began in a small way in September, 1921, and has continued from that time until the present. But before December, 1921, when manufacture on a large or substantial scale began, defendant's predecessor took the precaution to secure an oral opinion from its attorney, George Bean, Esq., as to whether or not it could manufacture the pump in question without infringement. Mr. Bean, after examination and investigation, told defendant that it could. This opinion he formally repeated in writing on January 10, 1922.

Although plaintiff knew that defendant had been actively manufacturing its pump since December, 1921, no suggestion that it was infringing was made until after the reissue was granted on May 19, 1925. At a conference between attorneys for the plaintiff and defendant on other matters in January, 1926, there was some discussion of the reissue here under consideration. It appears to have been suggested by plaintiff that defendant take out a license under the Wahle patent, but defendant refused. There was some other discussion on the same subject between counsel late in 1926 or early in 1927, but nothing resulted from it. Nothing was actually done to stop the infringement, and there was no change in the attitude of the parties as to their rights until July 9, 1929, when this suit was brought. The plaintiff thus waited four years without reasonable excuse after the reissue was allowed before it began these proceedings.

The evidence does not disclose any excuse justifying this long delay. No case is an exact precedent for another because the facts in no two cases are exactly alike, but a uniform principle runs through all the cases. They proceed on the theory that the plaintiff knows his rights and has had ample opportunity to establish them in the proper forum; that, because of delay, the defendant has good reason to think that the plaintiff believes his asserted rights to be worthless or that he has abandoned them. Galliher v. Cadwell, 145 U. S. 368, 372, 12 S. Ct. 873, 36 L. Ed. 738. The position of the defendant is further fortified in this case by the opinion of reputable counsel. It could well assume that plaintiff's counsel had reached the same conclusion as its own. McGill v. Whitehead & Hoag Co. (C. C.) 137 F. 97; Yates v. Smith (D. C.) 271 F. 27.

The question of laches then assumes the aspect of the plaintiff having stood by and having done nothing to protect its rights for seven years while the defendant was building up a business, which it thought was legitimate, and spending money in constructing a large plant.

We cannot say that the learned trial judge erred when he found from the evidence that plaintiff had not been diligent in asserting and enforcing its rights.

Was the position of the defendant materially and prejudicially changed because of the delay of the plaintiff in protecting its rights?

In September, 1921, defendant or its predecessor entered into an agreement with Burks, whereby it obligated itself to raise and put into the business of manufacturing pumps under his invention $85,000. It also

agreed to pay royalty to Burks. Accordingly it raised the $85,000 in 1922 by the sale of stock to sixty business and professional men in Chicago, and put it into the business, and has paid royalty to Burks since 1921. It has manufactured 27,000 complete pumping units, and more than 25,000 of these were sold after May 19, 1925. It now has a new factory with new equipment worth a quarter million dollars, not including its good will. An injunction against the defendant would virtually destroy this entire investment made in consequence of plaintiff's long delay in asserting its rights.

We think that the evidence clearly shows the delay, during which the defendant materially changed its position, to be inexcusable. Consequently we cannot say that the District Judge erred in refusing an injunction and an accounting.

The decree is affirmed.