Southwick W. BRIGGS and Stone Filter Company, Inc., Plaintiffs,

v.

WIX CORPORATION, Western Auto Supply Company, Montgomery Ward & Company and Sears, Roebuck & Company, and Fram Corporation, Defendants.

Civ. A. Nos. 65–C–1307, 65–C–1308, 65–C–1683–65–C–1685.

United States District Court
N. D. Illinois, E. D.

July 25, 1969.

Walther E. Wyss, Robert L. Rohrback, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for plaintiffs.

Halfpenny, Hahn & Ryan, Chicago, Ill., and W. R. Hulbert, Fish, Richardson & Neave, Boston, Mass., for defendant Fram Corp.

Charles B. Cannon, Chicago, Ill., for Wix Corp., Western Auto Supply, Montgomery Ward & Co. & Sears Roebuck (In 65 C 1308, 1683–1685).

Edward W. Osann, Jr., Wolfe, Hubbard, Voit & Osann, Chicago, Ill., for Gould Natl. Batteries (65 C 2073).

Prangley, Baird, Clayton, Miller & Vogel, Chicago, Ill., for Montgomery Ward in No. 65 C 1684.

Nathan N. Kraus, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for Sears Roebuck & Co. in 65 C 1685.

James W. Dent, Washington, D. C., for Wix Corp. in 65 C 1308.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM, ORDER AND JUDGMENT.

CAMPBELL, Chief Judge.

This is a patent infringement action. Plaintiffs originally filed six separate actions against the named defendants [1] accusing each of them with infringement of claims Nos. '9, 10 and 11 of patent No. 2,395,449. (Hereinafter referred to as '449), which was originally issued to plaintiff Southwick W. Briggs ("Briggs") on February 26, 1946. One of the original six cases has since been settled. (Briggs v. Gould-National Batteries, Inc., 65-C-2073). The patent in issue expired on February 26, 1963. After disposing of pretrial motions, including motions by certain defendants to transfer individual cases to other districts pursuant to 28 U.S.C. § 1404(a) which were denied, Briggs v. Fram Corporation, 272 F.Supp. 185 (1967) and Briggs v. Gould-National Batteries, Inc., 272 F.Supp. 186 (1967), the cases were ordered consolidated. Prior to trial and in accordance with the General Order of this court, the parties filed a stipulation of uncontested facts as well as a stipulation of agreed issues. All of the facts so stipulated I hereby adopt as findings of fact. Excellent and thorough pretrial and post trial briefs were also filed by all of the parties for which I am indebted to counsel.

Patent '449 was the subject of previous litigation in this court and in our court of appeals. Judge Julius J. Hoffman of this court upheld the validity of patent '449 in that litigation. Briggs v. M & J Diesel Locomotive Filter Corp., 228

---

F.Supp. 26 (1964). That decision was affirmed by the Seventh Circuit Court of Appeals. 342 F.2d 573 (1965).

The patent in question is an oil filter. Plaintiff Briggs holds title to the patent. Plaintiff Stone Filter Company ("Stone Filter") is the exclusive licensee. Defendants Fram Corporation ("Fram") and Wix Corporation ("Wix") are manufacturers of the accused devices. Defendants Sears, Roebuck and Co., Montgomery Ward & Co. and Western Auto Supply are retailers. Much of the relevant history of this patent and the inventor's background in this field is ably set forth by Judge Hoffman in his opinion in the M & J Case *supra*. (228 F.Supp. at 32–34). The issues to be resolved are clearly defined in the agreed statement of contested issues and in the defendants' additional statement of contested issues. They are:

1. Whether or not claims 9, 10 and 11 of U. S. patent No. 2,395,449 are valid;

2. Whether or not claims 9, 10 and 11 of U. S. patent No. 2,395,449 are infringed by the accused structures;

3. Whether or not recovery should be barred by laches.

4. Whether or not there was a failure to mark the number of the '449 patent which would bar recovery of damages.

In their pretrial and post trial statements and briefs, all of the defendants except Fram[2] agree that if patent '449 is valid and enforceable it has been infringed by the accused structures. I should state at the outset that the evidence clearly established that the filters manufactured by Fram also infringe, if the patent is valid and enforceable.

The defendants also raise additional issues other than those agreed to and listed above. These essentially relate to:

1. Whether Briggs informed the patent office of certain prior art;

2. Whether certain prior art was disclosed to Judge Hoffman in the M and J case;

3. Whether plaintiffs failed to disclose to the court in the M and J case the alleged widespead manufacture and sale of filters and filter elements embodying substantially the same constructions that are charged with infringement of claims 9, 10, and 11 of patent '449;

4. Whether patent '449 is unenforceable due to abandonment by plaintiffs of the right to enforce it;

5. Whether defendants are entitled to recover their costs and attorneys fees incurred in defense of these actions; and

6. Whether defendants are entitled to an accounting for damages suffered by them in connection with the defense of these actions.

I find that patent '449 is invalid. Accordingly, it is necessary to consider, other than the agreed issues, only the last three stated additional issues.

I am somewhat relieved that it is unnecessary for me to reach the delicate issues raised by (2) and (3) above—concerning what if anything was improperly kept from Judge Hoffman in his trial of the prior case. In this regard, I should first relate a brief summary of the history of this litigation. This cause was originally assigned to the calendar of Judge Hoffman as related to the prior cases. Judge Hoffman refused this designation because the prior cases were no longer pending and were therefore not related within the meaning of our local Rule 10. These cases were thereupon transferred by Judge Hoffman to the Executive Committee for reassign-

---

2. The position of Fram has varied slightly on certain issues from that of the other defendants and intervenors. See prior Art relied on in Stipulation 29. The variances do not affect the outcome.

ment according to the rules. My name was then drawn and the cases assigned to my calendar. I, of course, had to proceed without knowledge of what transpired before Judge Hoffman in the other earlier cases on the same patent. Although I willingly accepted the reassignment of these cases as proper under our rules, I can only consider the limited relation of these serious charges to the remaining issues now before me.

## THE PATENT CLAIMS IN ISSUE

The application for the patent in suit was filed on March 31, 1942 and the patent was granted on February 26, 1946. The patented filter did not gain much acceptance until early 1960 and the filters were not marked until that time. Thereafter, and until the patent expired on February 26, 1963, all of the filters produced and marketed by *these plaintiffs* were marked.

Claims 9, 10, and 11 of patent '449 read:

"9. A filter element in the form of a tubular body comprising a web of filter material folded to extend back and forth between the inner and outer peripheral surfaces of the tubular body with the folds of the web at the inner surface of the tubular body being juxtaposed and in contact with each other, and well defined grooves formed in the web at the contacting surfaces of the inner folds, said grooves extending in a generally radial direction with respect to the tubular body to provide passages between the contacting surfaces and thereby permit the free flow of a fluid between such surfaces.

10. A filter element in the form of a tubular body comprising an elongated web of filter material folded to extend back and forth between the inner and outer peripheral surfaces of the tubular body with the folds thereof extending longitudinally of the tubular body and the folds of the web at the inner surface of the tubular body being juxtaposed and in contact with each other, and well defined grooves formed upon the surface of the filter material which is exposed to and in communication with the bore of the tubular body, said grooves extending lengthwise of the elongated web and providing flow passages between the contacting inner folds.

11. A filter element in the form of a tubular body comprising an elongated web of ribbed cellulosic filter material folded to extend back and forth between the inner and outer peripheral surfaces of the tubular body with the folds thereof extending longitudinally of the tubular body and the ribs extending in a generally radial direction with respect to the tubular body, the folds of the webs at the inner surface of the tubular body being juxtaposed and in contact with each other."

## THE PRIOR LITIGATION

The *M and J* cases [3] were filed by plaintiffs in July, 1962 and involved diesel locomotive filters. Those cases charged infringement of patent No. 2,919,807 as well as No. '449. As plaintiffs state in their post trial brief, that litigation primarily involved No. 2,919,807 (hereinafter referred to as '807). Emphasis was placed on '807 because '449 had only about 8 months of life remaining. Plaintiffs allege that early in the *M and J* suit, however, they "learned from their counsel that many of the automobile oil filters then on the market infringed Patent '449." (The source and timing of their knowledge is discredited by the evidence.) For various reasons (dubious excuses) plaintiffs now state that it was impossible to bring the various infringers of '449 into that case. Without these many alleged infringers, however, and with No. '449 taking what plaintiffs themselves here describe as a minor role in the trial, plaintiffs obtained a favorable judgment as to the validity of '449.

In this case, '449 is the only patent in dispute; the defendants are substantial infringers if the patent is held valid;

---

3. Three cases were originally filed, but were ordered consolidated for trial (228 F.Supp. 28.)

and, as the volume and quality of the briefs alone will attest, the history and merits of the patent have been exhaustively developed. This service and attention was not afforded Judge Hoffman when he considered the validity of '449. In this case defendants introduced an abundance of evidence on the issues of validity and enforceability and also raised and argued additional defenses either not raised in the previous litigation or on which little evidence was introduced. For example, in this case there has been overwhelming evidence of large scale, open and notorious infringement of '449 by defendants and others in their industry and related industries. Yet, in the *M and J* case, the opinion comments on the lack of evidence on that point:

> "The right to enforce a valid patent may be abandoned by permitting a large scale infringement by the industry generally. * * * But there is no evidence that any party, not involved in this litigation, has infringed the '449 patent, much less evidence of a large scale infringement." (228 F. Supp. at 62.)

The opinion further states that the general rules relating to the presumption of validity enjoyed by a patent issued by the Patent Office (35 U.S.C. § 282) were applicable (228 F.Supp. at 35), based on the prior art and other facts there in evidence. However, in view of the extensive evidence of pertinent prior art brought out in this case and which was not considered by the Patent Office nor in the *M and J* case, I am compelled to find that the presumption of validity is not applicable. Day-Brite Lighting Inc. v. Sandee Manufacturing Co., 296 F. 2d 596 (7 Cir. 1960); Senco Products Inc. v. Fastener Corporation, 269 F.2d 33 (7 Cir. 1959).

## VALIDITY

The '449 patent relates to a filter element for filtering fuel oils and lubricating oils. The filter is a pleated straining element having ribs extending radially of the pleats to provide passage for the flow of oil. As ably described in 228 F. Supp. at pp. 37–38:

> "Claims 9, 10, 11, and 12 disclose a filter element in the form of a tubular body comprising a web of filter material folded to extend back and forth between the inner and outer peripheral surfaces of the tubular body, with the folds of the web at the inner surface of the tubular body being juxtaposed and in contact with each other. The web of filter material is variously described in these claims as ribbed cellulosic filter material with the ribs extending in a general radial direction with respect to the tubular body; or with well defined grooves formed in the web, which grooves extend lengthwise of the web or in a general radial direction with respect to the tubular body, to provide passages between the contacting surfaces and thereby permit the free flow of a fluid between such surfaces; or ribbed cellulosic wadding, the ribs extending lengthwise of the web and radially of the tubular body to form passages for a fluid between the inner contacting folds.

> Significant in these claims is that the inner edges of the pleats are juxtaposed and in contact with each other, and that to permit the flow of liquid between the contacting surfaces, grooves are provided in the filter material running radially of the tubular body.

> Because the inner pleats are juxtaposed, a large number of pleats can be achieved, and consequently a greater filtering surface than if the inner edges of the pleats had to be spaced apart. The grooves or ribs serve to allow fluid to flow, even though the inner surfaces of the pleats are in contact. The result of these factors is a workable oil filter."

Several forms of construction of a '449 filter are illustrated in drawings introduced into evidence. (Eg. def. ex. 1). These drawings have been of consider-

able assistance in resolving the complex questions presented.

## PRIOR ART

The opinion in the *M and J* case lists the only references noticed by the defendants in that case as prior art against the '449 patent as:

| | |
|---|---|
| 1,639,133 | Greene |
| 2,092,548 | Briggs |
| 2,122,111 | Poelman et al |
| 327,234 | Vokes (British) |
| 401,287 | Vokes (British) |

Accordingly, these were the only patents upon which Judge Hoffman permitted the defendants to rely in showing the state of the prior art. (228 F.Supp. at 37). None of these are relied on by the defendants in this case. They and the intervenors herein rely upon, as prior art, the following patents:

| | | |
|---|---|---|
| 480,810 | Bassett | (British) |
| 803,101 | Bassett | (French) |
| 46,881 | Bassett | (French) |
| 2,279,423 | Vokes | (U.S.) |
| 520,881 | Vokes | (British) |
| 520,927 | Vokes | (British) |

Defendants also rely on a printed publication, Briggs Clarifier Company 1940 Catalogue.

Plaintiffs were duly notified prior to trial and pursuant to 35 U.S.C. section 282, that the defendants would so rely with reference to prior art.

Upon analysis and review of the Vokes patents, as illustrated by defendants' exhibits and explained by the expert witnesses for both sides, it is clear that those patents disclose every feature and element of the claims of '449 here in issue. They also disclose every feature of those claims Judge Hoffman found to be missing in the prior *M and J* case.

Judge Hoffman emphasized that none of the patents cited by defendants in that case incorporated juxtaposed inner surfaces of the pleats with grooves extending radially to permit the flow of fluid through the filter material. The Vokes patent No. 2,279,423 relied on here, however, contains almost identical provisions to the patent in suit.

True, Vokes '423 does not specify the number of grooves which should be included in the filter device, but plaintiffs' expert agreed that the number of grooves was not essential. Dean Fischer, defendants' expert, summarized Vokes '423 thus:

"So in the Vokes patent then it shows close spacing of the web, close spacing of the inner poles (folds), and shows that by swaging you can provide ridges, and the ridges would extend absolutely radially. They would extend radially outward, and the purpose of these ridges is to allow for the flow of oil between the tight inner folds".

Judge Hoffman emphasized in his memorandum that none of the references relied on by the defendants in that case used ribbed or corrugated filter material to permit the flow of oil between stretches of material lying in contact with each other. He described the novelty he found in '449 as:

"I find that the '449 patent discloses something novel i. e., a filter with pleats lying close together at the inner folds, with grooves achieved by using ribbed material in such a way that the high points of the ribs on one stretch meet the high points of the ribs on adjoining stretches, the grooves thus formed permitting the fluid to flow between the stretches rather than being stopped or slowed down by the filter material where the stretches are in contact." (228 F.Supp. at 39).

The testimony of Dean Fischer in this case unequivocally established that these elements are not novel and that all of the claims here in issue were fully anticipated by Vokes '423.

Similarly, the various Bassett patents speak of:

"embossed projections * * * folded accordian fashion so that the layers of paper or fabric produced by the folding contact with each other at the summits·of the crimps, waves or projections."

I find that Bassett No. 480,810, in particular, includes every aspect of '449

considered novel by Judge Hoffman in the *M and J* case.

Defendants' exhibit 105–P vividly contrasts the "invention" in claims 9, 10, 11 of '449 as found by Judge Hoffman in the *M and J* case with the prior art relied on by the defendants in this case. This exhibit alone supports my conclusion that patent '449 is invalid.

 I conclude from all of the evidence before me that in every aspect the claims here in issue are substantially identical to prior devices and fully anticipated in the prior art. No device can be regarded as novel if it is substantially identical to a prior device. Monroe Auto Equipment Co. v. Heckethron Mfg. & Supply Co., 332 F.2d 406 (6 Cir. 1964). There is no invention here.

35 U.S.C. section 103 provides that even though the invention is not identical to the prior art, a patent is invalid:

"* * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court stated the test of obviousness under section 103 as follows:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined" (383 U.S. at 17, 86 S. Ct. at 694).

Having thoroughly reviewed and determined the scope and content of the prior art, a part of which is set forth above, I find that the differences in the prior art and the claims at issue are non-existent or at best minimal and insignificant. The evidence clearly established that the level of ordinary skill in the art was such that the subject matter as a whole would have been obvious at the time the so-called invention was made to a person having ordinary skill in the filtering art. In other words, a hypothetical person having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem. Appleton Electric Co. v. Efengee Electrical Supply Co., 412 F.2d 579 (7 Cir. 1969).

## LACHES

As far back as May, 1950, plaintiff Briggs and his former licensee brought suit for infringement of patent '449. That suit was filed in the District of New Jersey. The alleged infringer in that action was Purolator Products. Summons apparently was never served on the defendant in that case and the suit was eventually dismissed for want of prosecution. (Dec. 27, 1950.) Since the dismissal of that suit and throughout the life of this patent, Purolator continued to manufacture radially pleated grooved paper filters. See deposition of James V. Lightburn. During this same period and in some instances even before the Purolator case, the defendants herein and numerous others in their industry and related industries were manufacturing, selling and using radially pleated paper filters which infringed the claims of patent '449. Plaintiff Briggs, in his pretrial deposition, as well as in answers to interrogatories and in his testimony at trial, indicated that he was aware of the large scale infringement and further indicated complete indifference to the enforcement of the patent.

This indifference, which was shared by the licensees of the patent [4], was further established by the testimony of a number of witnesses. For example, the trial testimony of Fred S. Ehrman, a former president of Briggs Filtration

---

4. The licensees were, The Briggs Filtration Company Division of Bowser, Inc. and plaintiff, Stone Filter and a Predecessor, Stone Paper Tube Co.

substantiates that nothing was done to enforce '449 after the Purolator suit. The deposition of James J. Myers further establishes that Briggs was continuously aware of the many devices on the market and was of the opinion that they were infringing. See also the depositions of Earl W. Wallick, Edmund W. E. Kamm, Vincent A. Long and Paul L. Tillson. The testimony of these and numerous other witnesses establishes that the infringement of the '449 patent was a matter of continuous discussion and investigation by the plaintiff Briggs and his licensees over the years since the Purolator case. The testimony of Dean Fischer, previously discussed in relation to the validity of the patent, also established open or notorious infringement of '449 from the time of the Purolator case (1950) through to the expiration of the patent (1963).

The evidence is clear insofar as defendant Wix is concerned, that as early as 1959, plaintiff Briggs visited the plant of Wix and saw an infringing railroad diesel filter. This suit was not filed until 1965 and Wix was not named in the 1962 *M and J* case which involved railroad diesel filters.

This overwhelming evidence of plaintiffs' indifference to the large scale, open and notorious infringement was not presented in the *M and J* case. On the contrary, no evidence of other infringement was presented at all. As Judge Hoffman stated in his memorandum, "there is no evidence that any party, not involved in this litigation, has infringed the '449 patent, much less evidence of a large scale infringement." (228 F.Supp. at 62.)

■ Even a plaintiff's valid claim for damages is barred by the defenses of abandonment and laches when he is guilty of substantial and inexcusable delay in prosecuting his claim and that delay seriously prejudices the rights of defendants. The substance of the defense of Laches was ably summarized by our Seventh Circuit Court of Appeals in Universal Coin Lock Co. v. American Sanitary Lock Co., 104 F.2d 781, 782 (1939):

"The delay must be inexcusable and prejudicial to the defendant. Its existence depends upon the equities of the case and ultimate inquiry as to which side would fall the balance of justice in sustaining or denying the defense."

The Court, in the *Universal Coin Lock Co.* case quoted with approval the following language from Westco-Chippewa Pump Co. v. Delaware Electric and Supply Co., 64 F.2d 185 (3 Cir., 1933), which has particular application here.

The evidence does not disclose any excuse justifying this long delay. No case is an exact precedent for another because the facts in no two cases are exactly like, but a uniform principle runs through all the cases. They proceed on the theory that the plaintifff knows his rights and has had ample opportunity to establish them in the proper forum; that because of delay, the defendant has good reason to think that the plaintiff believes his asserted rights to be worthless or that he has abandoned them. Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 36 L. Ed. 738. The position of the defendant is further fortified in this case by the opinion of reputable counsel. It could well assume that plaintiff's counsel had reached the same conclusion as its own. McGill v. Whitehead & Hoag Co. (C.C.) 137 F. 97; Yates v. Smith (D.C.) 271 F. 27.

The question of laches then assumes the aspect of the plaintiff having stood by and having done nothing to protect its rights for seven years while the defendant was building up a business, which it thought was legitimate, and spending money in constructing a large plant.

We cannot say that the learned trial judge erred when he found from the evidence that plaintiff had not been diligent in asserting and enforcing its rights. (64 F.2d at 187.)

■ The defenses of abandonment and Laches have been frequently applied to patent cases. Judge Hoffman so recognized in the *M and J* case when he

stated, "The right to enforce a valid patent may be abandoned by permitting a large scale infringement by the industry generally." (228 F.Supp. at 62.) Certainly that principle applies to the circumstances in this case where the evidence clearly establishes that Briggs was aware of the wholesale infringement. Parenthetically, even if plaintiffs' strained interpretation of the evidence be accepted, i. e., that Briggs and his licensees were not aware, they certainly must be charged with knowledge they could readily have obtained upon inquiry. See Johnston v. Standard Mining Co., 148 U.S. 360, 13 S.Ct. 585, 37 L.Ed. 480 (1893); Pearson v. Central Ill. Light Co., 210 F. 2d 352 (7 Cir. 1954); and Hamilton v. Mid-West Abrasive Co., 216 F.Supp. 411 (W.D.Pa.1963).

■ The infringement here took place for a period of almost nineteen years. (Though admittedly only Purolator was active until 1950.) Plaintiff Briggs, held the patent all of that time. His various licensees gain no greater rights than he has been sleeping upon.

■ The most important consideration in determining the application of the doctrine of Laches is the prejudice the delay has worked on the defendant. These defendants have been severely prejudiced in that they conducted extensive business operations and made voluminous sales during this entire period. Had plaintiffs diligently pursued their remedies, these expenditures and sales might not have been made. See Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 135 F.2d 617 (7 Cir. 1943); George J. Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.2d 505 (7 Cir. 1928). Plaintiff was aware of the apparent industry-wide infringement but gave no notice of his patent and his intent to enforce it. This lack of notice was particularly prejudicial in light of the fact that plaintiffs once commenced litigation against Purolator and then permitted the action to be dismissed. This was clear notice to the industry that plaintiffs did not intend to attempt to enforce this patent of very doubtful validity.

## PLAINTIFFS' FAILURE TO MARK

The Briggs Filtration Company Division of Bowser, Inc. formerly held an exclusive license under the '449 patent. It relinquished its exclusive license in 1956 but continued to hold a non-exclusive license. The evidence established that this licensee manufactured and sold numerous filters which embodied the construction of the '449 patent throughout the period commencing in 1954 and continuing through the life of the patent.

The statute requiring the marking of patents provides as follows:

Patentee, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice. (35 U.S. C. § 287.)

■ This statute, particularly as it has been interpreted by the courts, acts as a complete bar to recovery of damages in cases such as this where a large volume of the patented articles have been sold commercially by any of the licensees. See Hazeltine Corp. v. Radio Corp. of America, 20 F.Supp. 668 (S.D.N.Y. 1937); Kilgore Mfg. Co. v. Triumph Explosives Inc., 37 F.Supp. 766 (D.Md. 1941). The only exception the statute allows is in a case where the infringer was notified of the infringement and continued to infringe. While plaintiffs argue that the defendants in this action

had such notice, the evidence does not support this argument. Furthermore, in the stipulation of uncontested facts in the final and binding pretrial order entered herein pursuant to the General Order of this court, the following stipulation was agreed to:

"Plaintiffs will not contend that they gave specific oral or written notice of infringement to any of the defendants or intervenors herein prior to the service of the complaints on such defendants." (Paragraph 27.)

█ Apart from the stipulation, plaintiffs argue that defendant Fram had actual notice of the infringement because Fram saw a trade brochure advertising Stone's railroad filter which mentioned the '449 patent. This conjecture is not adequate notice of the infringement within the meaning of the marking statute. Dunlap v. Schofield, 152 U.S. 244, 14 S.Ct. 576, 38 L.Ed. 426 (1894); Westinghouse Electric and Mfg. Co. v. Condit Electrical Mfg. Co., 159 F. 154 (S.D. N.Y. 1908); General Electric Co. v. George J. Hagan Co., 40 F.2d 505 (W.D.Pa.1929); and Kilgore Mfg. Co., *supra*. The cases cited by plaintiffs, namely Armstrong v. Motorola, Inc., 374 F.2d 764 (7 Cir. 1967) and Smith v. Dental Products Co. Inc., 140 F.2d 140 (7 Cir. 1944) are not inopposite. Nothing in those decisions relieves a plaintiff of the responsibility of giving the alleged infringer notice of infringement.

## COSTS, EXPENSES AND ATTORNEYS FEES.

█ All of the defendants urge that this is an exceptional case which entitles defendants to an award of costs and reasonable attorneys' fees incurred in the defense of these actions as well as an accounting for all damages resulting from these actions. Essentially the arguments of defendants are that plaintiffs knew that these actions were barred by the defenses of abandonment and Laches and by their failure to mark or give proper notice thereof, yet they persisted in this litigation thus requiring defendants to expend large sums in defending these actions and proving the defenses of abandonment and Laches and the plaintiffs' failure to mark. Defendants also argue that costs, expenses and attorneys' fees should be taxed against plaintiffs because they withheld substantial evidence relating to these issues as well as the nature of the prior art discussed above from the defendants and from Judge Hoffman in the *M and J* case.

The statute, (35 U.S.C. § 285) authorizes an award of attorneys' fees to the prevailing party in "exceptional cases".

Defendants' argument that this is such an exceptional case warranting an award of costs, expenses and attorneys' fees, finds support in the evidence, and in the cases cited by the defendants. The determination of whether such an award should be made, however, is left largely to the discretion of the court. Had Judge Hoffman kept and heard this case he might have been able to exercise such discretion having heard the previous case on the same patent. Certainly I cannot and therefore I find that this is not such an "exceptional case" warranting an award of attorneys' fees or costs and expenses.

## ORDER AND JUDGMENT

For the reasons set forth herein I find that patent number '449 is invalid. I further find that enforcement of patent '449 is barred by abandonment and Laches and that the recovery of damages is barred because of plaintiffs failure to comply with the marking statute.

Judgment accordingly.