
**U. S. EXPANSION BOLT CO.**

v.

**JORDAN INDUSTRIES, INC., et al.**

Civ. A. No. 42485.

United States District Court,
E. D. Pennsylvania.

July 27, 1972.

Samuel J. Stoll, Robert S. Stoll, New York City, Don F. D'Agui, D'Agui & DelCollo, Philadelphia, Pa., for plaintiff.

Alan H. Bernstein, Stanley H. Cohen, Caesar, Rivise, Bernstein & Cohen, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is a patent infringement action over which we have jurisdiction by virtue of 28 U.S.C. § 1338(a). Plaintiff is the owner of U.S. Patent No. 3,022,-701, issued on February 27, 1962. This patent relates to an anchor-type wall fastener composed of an anchor and an expanding member. Three principal defenses to this action have been set forth by the defendants. First, they maintain that the patent is unenforceable because plaintiff is guilty of laches. Secondly, they assert that the subject matter of the patent at the time of invention would have been obvious to one having ordinary skill in the art and is thus invalid within the meaning of 35 U.S.C. § 103. Finally, defendants contend that even if the patent is held valid by this court, the accused products of the defendants do not infringe the patent.

## LACHES

Plaintiff's patent was issued in February of 1962. In May of that year, plaintiff's president, Mr. Zifferer, wrote to Mr. Topf, the president of defendant Jordan Industries, demanding a cessation of an alleged infringement of the patent in question. There then followed five years of intermittent correspondence and threats between the plaintiff and Jordan Industries before plaintiff filed this action in July of 1967. Defendants allege that this delay by plaintiff of five years in initiating the suit after it initially accused

defendant Jordan of patent infringement constitutes laches or inequitable conduct and forecloses plaintiff from relief.

" * * * [T]here are two elements in laches: (1) Lack of diligence on the part of the plaintiff; and (2) injury to defendant due to the inaction of the plaintiff." Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 64 F.2d 185, 186 (C.A. 3, 1933). In this case, promptly after the patent was issued, plaintiff informed defendant Jordan in 1962 that it considered Jordan's "Jiffy" nylon anchor fastener to be an infringement of the patent. After an exchange of letters over a period of time, without conceding any infringement, Jordan agreed to modify its accused fastener by changing to another type of screw as the expanding member component of its fastener. This modification took place in 1964. Plaintiff promptly informed Jordan that it was in "total disagreement" with Jordan's view that the anchor as modified did not infringe the patent. Later letters from plaintiff to defendant Jordan over a period of years indicate that it consistently and emphatically accused Jordan of infringement of its patent.

■ This is not a case of a patent holder sleeping on its rights, failing to advise the alleged infringer of its displeasure with its actions and thus leading the defendant to think that it could safely manufacture its device with impunity. However, even if we were to conclude that plaintiff should have been more diligent in litigating its claim at an earlier date, this action would not be barred by laches because defendants have failed to demonstrate that their position was materially and prejudicially changed because of plaintiff's delay in protecting its rights. There was no evidence whatsoever of a large investment in new machinery, or any other significant expenditure or burden occasioned by plaintiff's delay in bringing this action. Without proving such injury, the defendants have not sustained their defense of laches. Jenn-Air Corporation v. Penn Ventilator Co., Inc., 464 F.2d 48 (C.A. 3, June 27, 1972). Compare Westco-Chippewa Pump Co., *supra.*

## VALIDITY OF THE PATENT—OBVIOUSNESS

■ Our starting point in assessing any challenge to the validity of this patent is the presumption that the patent is valid with the burden of proof resting on the party asserting invalidity. 35 U.S.C. § 282. In light of this statutory presumption the burden is a heavy one. Trio Process Corporation v. L. Goldstein's Sons, Inc., 461 F.2d 66 (C.A. 3, May 22, 1972); Eagle Iron Works v. McLanahan Corporation, 429 F.2d 1375, 1382 (C.A. 3, 1970). " * * * [I]nvalidity must be demonstrated by clear and convincing proof." Trio Process Corporation, *supra,* at p. 70.

Recognizing, however, that "the presumption is by no means conclusive", Schmidinger v. Welsh, 383 F.2d 455, 462 n. 10 (C.A. 3, 1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1037, 1040, 19 L.Ed.2d 1134 (1960), we must evaluate defendants' claim that the patent is invalid because its subject matter was obvious at the time of invention. The standard of obviousness is set forth in 35 U.S.C. § 103 which provides:

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * * "

The patent in suit is a wall fastener composed of an anchor and an expanding member, sold commercially as the "Tap-It" fastener. These fastening type devices are commonly used where conventional fasteners such as a nail or screw without anchor cannot be utilized because of the composition and phys-

ical characteristics of the wall to which the object will be attached. As stated in the patent, such wall materials would include concrete, cinder block, brick, plaster, stone, marble, composition board and others. The basic principle by which anchor type fasteners operate is not complicated. After a hole is drilled in the material, the anchor when placed in the hole is wedged in as it is expanded by a nail, screw or other member driven into it. The friction against the sides of the hole keeps the anchor in the wall, thus enabling an object to be fastened to a wall otherwise unsuited for such purposes.

The expandable anchor of plaintiff's patent is molded of plastic having the general properties of nylon. It generally has a cylindrical configuration with a head which does not enter the hole. At the headed end there is a longitudinal hole to receive the driven expanding member, with the other end having a longitudinal slot aligned with that hole and extending to it. The slot separates a pair of flexible portions. They are forced outwardly as the member is driven through the slot because of the fact that the slot has a smaller diameter than the shank of the expanding member. The expanding member part of this patent has a substantially cylindrical shank with a pointed tip adapted for wedging action as in the conventional nail. It can most aptly be described as a "screw-nail", however, because unlike the conventional nail, only the bottom half of the shank is smooth. The top of this "screw-nail" has a screw-type head with a slot for a screwdriver, and next to this headed end shallow screw threads with rounded edges which terminate about midway on the length of the shank.

The patent states that the "screw-nail" may be hammer driven in a translatory motion (longitudinal, nonrotational). It is not rotated into the anchor with its threads cutting into the anchor wall. Instead, after being hammer driven, the nylon material of the anchor cold flows into the spaces between the threads to form transitory screw threads in the anchor wall. This member, because of its slotted screw-type head may be screwed out of the anchor by screwdriver means. Since nylon has a relatively retentive memory, once the "screw-nail" is withdrawn from its wedging engagement the anchor will tend to resume its original form and proportions and will, therefore, be reusable.

The primary method by which we must determine whether this patent was obvious at the time of invention has been set forth by the Supreme Court in recent decisions.

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved."

Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966); Anderson's-Black Rock v. Pavement Salvage Co., 396 U.S. 57, 62, 90 S.Ct. 305, 24 L.Ed. 258 (1969).

The prior art must be evaluated as of August 10, 1959, the time of invention (the date of the patent application), in making our determination of obviousness.

Plaintiff does not contend that its nylon anchor was a new invention at the time of the patent application. The Patent Office recognized among the prior art two foreign wall anchor patents disclosing anchors which were characterized by being made of a plastic material such as nylon. Swiss Patent No. 311,726 (1956); French Patent No. 1,122,536 (1956). The French Patent specified the types of wall materials for which it was designed, and the list is almost identical to that included in the instant patent application. Thus it is clear that they were intended to be used in equivalent manners. In fact, plaintiff stipulated at trial that the nylon anchor of its patent is by itself and in conjunction with a plain nail prior art against the patent in suit.

544

■ . The validity of this patent thus hinges on the question of whether plaintiff's "screw-nail" used in combination with a known nylon anchor is obvious or not. Since defendants have come forward with significant prior art not considered by the Patent Office, the presumption of validity attaching to plaintiff's patent in this case is weakened. Hadco Products, Inc. v. Walter Kidde & Company, 462 F.2d 1265 at p. 1272, n. 33 (C.A. 3, June 16, 1972).

Attempts to combine the advantageous features of a screw and nail in one member are not new. The greater holding power of a nail with a spiral thread running the length of its shank was taught as early as 1868. Dunn Patent No. 83,699 also disclosed that a nail with threads too close together is harder to drive and does greater injury to the material in which it is driven. In 1888 there was an invention entitled "Screw Nails" which in some particulars closely resembles the "screw-nail" of the instant patent. Notably, it has a slotted head, and then is threaded to a mid-point on its shank. The remaining part of its shank is smooth, concluding with a point. It teaches the advantage of being extracted more easily than a nail, and being capable of reuse unlike a nail. British Wells Patent No. 8323. This patent makes no mention of fasteners or the manner in which it is to be driven. Lee Patent No. 1,865,866 (1932), however, does disclose a "screw-nail" threaded for approximately 25% of the shank down from the head which is intended to be used as an expanding member in a fastening device. Unlike the "screw-nail" in this suit, it was not intended to be completely hammer driven. The Lee nail teaches hammering it in to the point where one thread is embedded, with the member then being screwed into place with a screwdriver, utilizing its sharp threads.

However, "screws" or "nails" which are completely hammer driven and then extracted with a screwdriver are not new either. Fetter Patent No. 8,121 (1878); Pratt Patent No. 10,171 (1853); J. Soled, *Fastener's Handbook* 72 (1957). Plaintiff emphasizes that these references make no mention of use in connection with expansion fasteners. We find though that the level of ordinary skill in the pertinent art is that of the ordinary mechanic or tradesman, there thus being familiarity with screw nails used for a variety of purposes. It is apparent that one skilled in the art could very well decide to use any known screw nail with a known anchor.

Plaintiff's precise "screw-nail" expander is not shown by any single piece of prior art. Those that are threaded part of the way along the shank in a fashion similar to plaintiff's member (e. g., British Wells Patent, *supra*, and Lee Patent, *supra*) appear to have sharp cutting threads. This is so they can cut threads rotationally in the material in which they are driven. In anchors without cold flow this would be necessary to attain maximum holding action. The hammering of a screw with sharp threads into such an anchor would not only seriously damage the anchor but would reduce the tensile strength that would be present from the threading action if the screw was screwed in with a screwdriver. We find that the prior art consisting of defendant Jordan's sheet metal screw and plastic butyrate anchor combination does not teach or equal plaintiff's patented combination. The screwing of a sheet metal screw or another screw with sharp threads into a nylon anchor would cut threads in the inner wall of the anchor leaving no space for cold flow between the routes of the threads of the screw and the wall. The anchor of course would not be reusable.

Because of the nylon anchors' property of cold flow, sharp thread-cutting threads are not necessary with such an anchor, and plaintiff has rounded its screw threads to take maximum advantage of this property. We do not think this is enough, however, to render the patent non-obvious. While the precise screw-nail does not appear in the prior art, such a slight modification as the

 

rounding of the screw thread of a nail of otherwise known configuration would be obvious to an ordinary tradesman having ordinary skill in the art. Not only was the nylon anchor not new, but its characteristic of cold flow with its advantages of an improved grip resistant to loosening due to shock and vibration was also known. J. Soled, *Fasteners Handbook* 387 (1957). Plaintiff is not the inventor of the nylon anchor and can claim no benefits from it. Plaintiff's president, Kenneth Zifferer, testified that its "screw-nail" acts the same way as a plain nail and produces the same result when used with its nylon anchor except for removability. As discussed previously, the hammering of a threaded nail with a slotted head that may be removed by screwdriver is not a new concept.

Plaintiff demonstrated at trial that its patented fastener ("Tap-It") has gained great acceptance in the trucking industry as it is used to attach plywood liners to the structural frames of trailer trucks. To a large extent in recent years it has been preferred over fasteners previously used in that industry. The Supreme Court has said that secondary considerations such as commercial success and the fulfillment of long-felt need may be relevant as indicia of obviousness. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). But these factors are entitled to only measured weight, as the Court indicated in a recent decision finding a combination patent invalid for obviousness despite the fact that it enjoyed commercial success. Anderson's-Black Rock v. Pavement Salvage Co., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

Moreover, testimony indicated that the main reason plaintiff's "Tap-It" fastener has enjoyed commercial success in the transport industry is because of the nylon composition of the anchor component. It is preferable to a hard anchor because of the resilient qualities of the nylon which enable plaintiff's anchor to respond better to vibrations caused while riding over roads while a less resilient anchor might back out because of vibrations. This only reinforces our view that plaintiff's fastener combination is effective principally because of the nylon anchor and its properties.

Defendants have carried their burden of proving invalidity by clear and convincing evidence. We hold that plaintiff's patent, U. S. Patent No. 3,022,701, is invalid within the meaning of 35 U.S.C. § 103, being reasonably obvious to one with ordinary skill in the art at the time of invention. Therefore, it becomes unnecessary to determine whether defendants' products have infringed plaintiff's patent.