AMERICAN HOME PRODUCTS CORP.,
Plaintiff-Appellant-Cross-Appellee,

v.

LOCKWOOD MANUFACTURING CO.,
Defendant-Appellee-Cross-Appellant.

Nos. 72–2202, 72–2203.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1973.

Decided Aug 28, 1973.

George P. McAndrews, Chicago, Ill., for appellant; Timothy J. Malloy, Molinare, Allegretti, Newitt & Witcoff, Chicago, Ill., and Thomas Y. Allman, Taft, Stettinius & Hollister, Cincinnati, Ohio, on brief.

Richard H. Evans, Cincinnati, Ohio, for appellee; Truman A. Herron, John D. Poffenberger, Wood, Herron & Evans, Cincinnati, Ohio, on brief.

Before EDWARDS, PECK and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This is an appeal and a cross-appeal from a judgment of the District Court which found that the two patents in suit were valid and infringed, but that the plaintiff was guilty of laches and therefore could not prosecute the suit. The plaintiff appealed from the finding of laches, and the defendant has cross-appealed from the findings of validity and infringement.

The predominant patent is a process patent (#2,687,994) which concerns a method of darkening tin by oxidizing it. The second is a product patent (#2,724,526) for a baking pan having a steel base, an overlaying layer of iron-tin alloy, a further layer of metallic tin, and a surface layer of olive-green oxide. The second is a derivative of the first in that the pan is the end result of the process. These patents are fully discussed in two opinions of the Seventh Circuit, Ekco Products v. Chicago Metallic Mfg. Co., 321 F.2d 550 (7th Cir. 1963), cert. denied, 375 U.S. 970, 84 S. Ct. 490, 11 L.Ed.2d 418 (1964), and 347 F.2d 453 (7th Cir. 1965), and in the opinion of the District Court, 173 U.S. P.Q. 486 (S.D.Ohio 1972), and the technical details need not be repeated here.

**I**

**LACHES**

The record discloses that there are only three major manufacturers of commercial baking pans in the United States. The largest is Ekco, a subsidiary of the named plaintiff, American Home Products; the second is Lockwood, the defendant; the third, and smallest of the three, is Chicago Metallic Mfg. Co., against whom Ekco brought an infringement suit in 1958 for infringement of the same patents which are the subject of this suit.

In March of 1950, Ekco applied for the '994 patent, which issued in 1954; in April of 1950, Ekco applied for the '526 patent, which issued in 1955. Ekco

began to market baking pans manufactured by the patented (pending) process in 1950. In the fall of 1951, Lockwood began to market an identical line of pans. In September of 1956, after both patents had issued, Ekco notified Lockwood and Chicago Metallic that Ekco felt that they were infringing Ekco's patents. Both Lockwood and Chicago Metallic denied that they were infringing, and both declined an offer to sign licensing agreements.

Following this reply from Lockwood, Ekco replied to Lockwood with a two paragraph letter, a document critical to this case, which read in its entirety:

"We have received your letter of June 11th, 1957 regarding our proposed license agreement relating to the process of forming a heat absorptive oxide coating on tin plated bake pans.

Since your letter raises a legal question, I have referred this matter to our attorneys and have asked them for their opinion regarding the position you have taken."

There was no further correspondence or other communication between Ekco and Lockwood concerning these patents until the filing of this suit in 1967. During this ten year interval, however, Ekco was not idle.

In May of 1958, Ekco commenced patent infringement litigation against Chicago Metallic in the Federal District Court in Chicago (N.D.Ill.) for infringement of the dominant '994 and the derivative '526 patent (and for infringement of two other derivative patents not relevant to this case). In March of 1962, the Chicago District Court held that the Ekco patents were invalid. In August of 1963, the Seventh Circuit reversed this judgment, holding that the '994 patent was valid, 211 F.2d 550 (7th Cir. 1963), cert. denied, 375 U.S. 970, 84 S.Ct. 490, 11 L.Ed.2d 418 (1964); the parties are not in agreement as to the holding of this case concerning the '526 patent.

Upon remand, the District Court found that the '526 patent was valid and infringed (damages as to the '994 patent had been settled). On June 17, 1964, the Seventh Circuit reversed this judgment of the District Court and held that the defendant in that case was not infringing patent '526 relating to the tin plate baking pan because it had a thicker alloy layer than described in the patent claims, 347 F.2d 453 (7th Cir. 1964). Upon remand, accountings were made and on September 19, 1966, the parties settled the case and the District Court entered a final order terminating all proceedings in the Chicago Metallic case. Eight months later, on May 23, 1967, Ekco brought this action against Lockwood in the District Court for the Southern District of Ohio. As noted above, the District Court found that the patents were valid and infringed, but dismissed the complaint upon a finding of laches.

The parties do not dispute that the doctrine of laches is applicable to patent cases in which the plaintiff has "acquiesced for a long term of years in the infringement of the exclusive right conferred by the patent, or [has] delayed, without legal excuse, the prosecution of those who have openly violated it." Woodmanse & Hewitt Mfg. Co. v. Williams, 68 F. 489, 493 (6th Cir. 1895) quoting Kittle v. Hall, 29 F. 508, 511 (S.D.N.Y. 1887); see also General Electric Co. v. Sciaky Bros., 304 F.2d 724 (6th Cir. 1962).

Generally, laches requires that there be, in the light of all the existing circumstances, an unreasonable delay resulting in prejudice to the other party. Sobosle v. United States Steel Corp., 359 F.2d 7, 12 (3rd Cir. 1966). Ekco, however relies upon the generally accepted principle that delay in suing an infringer is not legal delay in a laches sense when the party asserting the patent is engaged in other litigation against other infringers. U. S. Mitis Co. v. Detroit Steel & Spring Co., 122 F. 863, 866 (6th Cir. 1903); Jenn-Air Corp. v. Penn Ventilator Co., 464 F.2d 48, 50 (3rd Cir. 1972). This exception takes into account the fact that patent litigation is

often unusually complex, lengthy and expensive. It is an equitable doctrine, and must be considered as one factor which would, in appropriate circumstances, negate a defense of laches. Therefore, we must assess the various factors which might tend to negate a claim of unreasonable delay and must consider all of the factors which contributed to this admittedly unique situation.

First of all, we reject Ekco's suggestion that the existence of other litigation automatically excuses any delay in bringing suit against a second alleged infringer. We do not find that the cases support so rigid an application of this equitable doctrine. For example, in Remington Rand v. Acme Card System, 29 F.Supp. 192 (S.D.Ohio 1937), the earlier litigation had been terminated favorably to the patent owner only four weeks before the second suit was brought. Nevertheless, the patent owner was precluded from maintaining the second suit by the doctrine of laches because the plaintiff had lulled the defendant into a sense of security and induced it to make expenditures which otherwise would have been unnecessary. The court rejected the plaintiff's argument that other litigation automatically excused the delay in bringing the action against the defendant. 29 F.Supp. at 200.

Also, in Anchor Stove & Range Co. v. Montgomery Ward & Co., 114 F.2d 893 (7th Cir. 1940), the Court refused to permit the action to be prosecuted even though the plaintiff was engaged in other litigation during the period of alleged delay principally because the defendant in the present suit may have had no knowledge of the prior action. Similarly, in Baker Mfg. Co. v. Whitewater Mfg. Co., 430 F.2d 1008 (7th Cir. 1970), upon which the District Court relied heavily, the Seventh Circuit rejected the "other litigation" defense to the laches doctrine because the patent owner had not found time during the five years prior to the instigation of the second litigation to notify the defendant that it was going to press its claim of infringement. 430 F.2d at 1015.

■ In this respect, the admonition of the District Court is precisely pertinent:

"The fact is there was no agreement [to delay a suit against Lockwood pending the determination of validity in the Chicago Metallic litigation]. If there had been, these corporate entities and their counsel were fully capable of writing an appropriate one-page letter. No other explanation is advanced by the delaying plaintiff." 173 U.S.P.Q. at 497.

This is not to imply that the other litigation rule is applicable only by agreement between the parties; clearly it is not. See: 2 Pat.L.Pers. § B.3 [2] at 10–11 (1972). But if Ekco had intended to press its claim after the Chicago litigation, it surely would have (or should have) found time to send Lockwood a simple letter to that effect.

This notification is important, partly because it puts the accused infringer on notice that a suit will be filed against him on this issue, and partly because it permits him to bring a declaratory judgment action if the delay in waiting for a judicial determination would be a burden upon his proposed operation.

■ Although the "other litigation" exception does permit a patent owner to sue multiple infringers consecutively, we are unable to find any authority for the proposition that the existence of "other litigation" is a complete bar to the assertion of a laches defense. Although multiple litgation need not be maintained against multiple infringers, we see no reason why a patent owner need not at least assert to the other infringers its intention to bring a subsequent action at the termination of the presently pending action.

The competing equities were set out by the Third Circuit in Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 64 F.2d 185 (3rd Cir. 1933):

"It is rather hard and seemingly unjust that any one should be allowed to

infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it does not seem equitable for a person with full knowledge to sleep on his rights for seven years and thus lead another to think that he is safe in following his counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made large investments and built up a good business, punish him and innocent investors for doing what might have been prevented by timely action on the part of the patentee." 64 F.2d at 186.

In addition to Ekco's failure to assert its intentions to Lockwood in 1958, there is the additional failure of Ekco to bring suit against Lockwood after the first opinion of the Seventh Circuit in 1963. The interpretation of the "other litigation" doctrine most favorable to Ekco would only excuse Ekco's inaction up to 1964. There is no excuse for the delay in bringing suit after the first opinion of the Seventh Circuit. That decision found unequivocally that the '994 patent, the dominant patent, was valid and infringed, and although the case was remanded for further proceedings, no judgment could have been rendered inconsistent with this holding, and Ekco knew that it would prevail in this litigation. This became an absolute certainty when the Supreme Court denied the appellee's petition for certiorari on January 6, 1964, Chicago Metallic Mfg. Co. v. Ekco Prod. Co., 375 U.S. 970, 84 S.Ct. 490, 11 L.Ed. 2d 418.

Ekco points out that Lockwood was aware of the Chicago Metallic litigation, and it is not unreasonable to presume, in an industry dominated by only three companies, that any one company would be aware of important patent litigation between the other two. However, the knowledge of the other litigation is not the important factor; the point is that Ekco never asserted to Lockwood that it intended to file similar litigation against it at the conclusion of the Chica-

go litigation. Had such notice been made by Ekco at any time during the pendency of that litigation, until 1963, the company would have been informed of the threat of litigation on this process and this particular product, and the company could have taken steps to mitigate any losses which might result from an adverse result in such a suit.

The damage resulting to Lockwood by the failure of Ekco to inform it of the threat of litigation is most clearly demonstrated by an interim transaction. On February 25, 1965, all of the assets of the Lockwood Company were sold to new owners. As a part of this transaction, the sellers were requested by the purchasers to list all pending and threatened law suits against the company. Although various unrelated matters were listed, including one involving Ekco, no mention of this patent dispute was made. This failure to include this dispute in the list of threatened litigation indicates the reliance which Lockwood had placed upon Ekco's failure to assert this cause of action against it, even in the most informal manner. In reliance upon this silence, the purchasers of the Lockwood Company were deprived of the opportunity to consider the effect which this litigation might have upon the company, and, unaware of any claim against the company, built up the business by expanding the operations of the company using the contested product and process. See Anchor Stove & Range Co. v. Montgomery Ward & Co., supra, at 895.

As an issue of fact, a finding of laches cannot be disturbed unless it has been shown to be clearly erroneous, General Electric v. Sciaky Bros., supra; Rule 52(a) F.R.Civ.P., and as a question addressed to the discretion of the District Court, it will not be disturbed unless an abuse of discretion has been shown. City of Erlanger v. Berkemeyer, 207 F.2d 832 (6th Cir. 1953); Baker v. Whitewater, supra, at 1009; Gillons v. Shell, 86 F.2d 600, 611 (9th Cir. 1936). After a careful consideration of the record before this Court, we conclude that the appellant has not met this

burden, and accordingly, the judgment of the District Court on the issue of laches is affirmed.

## II

## VALIDITY

On cross-appeal, Lockwood contends that both patents in suit are invalid for obviousness. The technical details of the patents are set out in the opinions of the Seventh Circuit and in the opinion of the District Court. Suffice it to note that, as detailed in these prior opinions, the patented process is a two step process: first, the pan is anodized to form an oxide coating on the tin that is dark or blue-black in color; the second step involves heating the pan to an elevated temperature from about 190° C to 230° C to convert the oxide to green oxide of tin.

Initially we observe that the normal statutory presumption of validity accorded to a patent (35 U.S.C. § 282) is greatly enhanced when it has been held valid in a prior decision. A prior adjudication of validity should be followed "unless the court is convinced of a very palpable error in law or fact." Cold Metal Process Co. v. Republic Steel Corp., 233 F.2d 828, 837 (6th Cir.), cert. denied, 352 U.S. 891, 77 S.Ct. 128, 1 L. Ed.2d 86 (1956), quoting Penfield v. C & A Potts & Co., 126 F. 475, 478 (6th Cir. 1903).

Lockwood's position, however, is that the prior decisions of the Seventh Circuit should be reconsidered in light of new evidence which was not presented to that Court in the Chicago Metallic litigation. Lockwood contends that the Seventh Circuit did not consider the argument that the patent is obvious because the second step of the patent process is an inevitable result of heating the pan, which would occur in ordinary baking. Lockwood argues that the heating incidental to baking causes the color change because the claimed temperature range covers the temperatures used in ordinary baking, and that

therefore the patents should be held invalid because the results flow naturally or inevitably from the teachings of the prior art.

We agree with the District Court that the evidence presented did not support this argument. The temperature specified in the patent is just below the melting point of the tin. The evidence showed that pans take many hours to convert the green oxide of tin when bread dough is in them because the heat of vaporization of the water in the dough causes the surface temperature of the pan to drop too low for rapid conversion; before this conversion could be completed the thick black oxide would flake off and the pans would corrode. After hearing the testimony of the inventor (Russell) and of experts in the field, and after hearing the testimony of Lockwood's technical experts, the District Court made the following finding:

"This record demonstrates, however, that what the inventor Russell did—simple as it was—defied the expert research, not only of those possessing 'ordinary skill' but of those who could be described as the most skilled. Even after the result (i. e., product of what he had done) was in the hands of Chicago Metallic, Lockwood, U. S. Steel, The Batelle Memorial Institute, etc.—so, each of them had the benefit of knowing what their objective was—it took Chicago Metallic months and Lockwood more than a year to solve what was concededly a definite 'advance.' That is hardly obvious." 173 U.S.P.Q. at 490.

We conclude, after an examination of the record before this Court, and after a careful consideration of the prior decisions of the Seventh Circuit, that the District Court's finding that the additional evidence presented by Lockwood was insufficient to overcome the enhanced presumption of validity which accompanies this patent.

The judgment of the District Court is affirmed.