TANDY CORPORATION

v.

MALONE & HYDE, INC.

No. 82–3380.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 1, 1984.

I.C. Waddey, Jr., Nashville, Tenn., for plaintiff.

Walter H. Crouch, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This action is before the Court on defendant's motion for summary judgment based on the equitable defense of estoppel by laches. Plaintiff Tandy Corporation is a publicly held Delaware Corporation, headquartered in Fort Worth, Texas, and is record owner of the marks RADIO SHACK, THE SHACK, and SHACK. Plaintiff owns or franchises more than six thousand RADIO SHACK retail outlets that specialize in consumer electronic goods, including merchandise designed for automotive use.

Defendant Malone & Hyde, Inc., is a Tennessee corporation headquartered in Memphis, Tennessee, that traditionally has engaged in food distribution and specialty retailing. Since July 1979 defendant has operated a chain of retail auto parts stores under the trade name and source mark AUTO SHACK.

Plaintiff's complaint in this case alleges service mark and trademark infringement, false designation of origin, unfair competition and trademark dilution, with damages and injunctive relief requested. Jurisdic-

tion of the Court, which is uncontested, is authorized under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1332(a)(1), 1338(a), and 1338(b).

## I. Background

In 1977 defendant began investigating the retail auto parts industry to determine whether it might profitably enter the industry by acquiring an existing retail auto parts business. A number of potential acquisition candidates were considered and rejected [1] during 1977 and 1978, and an unsuccessful bid made to acquire Chief Auto Parts in southern California. In the spring of 1978 defendant became interested in Auto Shack, Inc., a retail auto parts business founded in 1975 by Mr. Albert J. Scavariel and headquartered in Phoenix, Arizona. In 1978 Mr. Scavariel was operating six or seven Auto Shack outlets, including one opened in 1976 at 3334 West Van Buren in the same shopping center with a Radio Shack. Defendant decided that Auto Shack, Inc., was the best-managed retail auto chain it had encountered and in September 1978 reached a tentative merger agreement with Mr. Scavariel. Mr. Scavariel ultimately decided not to consummate the proposed merger, but he indicated he very much wanted to resume merger negotiations in the future. In addition, Mr. Scavariel offered to help defendant start its own retail auto parts business.

Mr. Scavariel introduced defendant to his suppliers, advised defendant on inventory design and invited defendant's employees to work for a couple of weeks in his Auto Shack stores to observe his operation firsthand. Meanwhile, defendant began searching for a name for its new business and hired outside trademark counsel to investigate the availability of any name selected. In late 1978 defendant considered the names "Auto Wise" and "Auto Mart," but abandoned them when counsel advised that those names were registered and in use.

With an eye to future affiliation, Mr. Scavariel offered in January 1979 to let defendant use the name AUTO SHACK in states other than Arizona. Up to that time Mr. Scavariel had never received objections to the AUTO SHACK name from plaintiff or anyone else, even though plaintiff was aware of Mr. Scavariel's use of the name as early as August 1976.[2] Mr. Scavariel is especially fond of the AUTO SHACK name because it mirrors his initials, A.S. Defendant was enthusiastic about using the AUTO SHACK name because of close cooperation with Mr. Scavariel and the hopes for future acquisition of Auto Shack, Inc. of Arizona.

Upon receiving Mr. Scavariel's offer, defendant directed its outside trademark counsel to research the availability and registerability of the AUTO SHACK name for retail auto parts stores. The search revealed a CYCLE SHACK and a VAN SHACK[3] in use, but failed to disclose any possible conflict with any of plaintiff's marks. Counsel advised defendant that no conflict existed and defendant decided to adopt the AUTO SHACK name. Mr. Scavariel wrote a letter to defendant dated January 23, 1979, stating that he "would be pleased for Malone & Hyde to use the name AUTO SHACK, YOUR SUPERMARKET FOR AUTO PARTS, for its new chain of auto stores." Mr. Scavariel's letter also stated that he wished to retain exclusive use of the name in Arizona. Defendant opened its first AUTO SHACK store in early July 1979.

Plaintiff learned of defendant's use of the name AUTO SHACK in July 1979 and

---

**1.** Among the companies considered were Checker Auto Parts, owned by Valley Distributing Company of Phoenix, Arizona; Parts, Inc., of Memphis, Tennessee; Nationwise Auto Parts, headquartered in Columbus, Ohio; Hi-Lo Stores, headquartered in Houston, Texas; Crazy Joe, of North Carolina; Fleenor's Auto Parts, headquartered in Indianapolis, Indiana; and Stinger Sam, of Springfield, Missouri.

**2.** Although plaintiff was aware of Mr. Scavariel's Auto Shack stores as early as August 1976, no objection was made until December 1982, eight months after the filing of this claim.

**3.** CYCLE SHACK was registered by Cycle Shack, Inc., of Houston, Texas, for motorcycles, bicycles, motorcycle trailers, and parts thereof. THE VAN SHACK was used by Van & RV Products, Inc., of Elkhart, Indiana, for wholesale and retail van parts and accessories.

in August 1979 consulted outside counsel with the resolution to sue defendant for trademark infringement. Plaintiff, however, neglected to notify defendant of its objections or intent to sue until March 1982, nearly three years after plaintiff decided to take action. In August 1979 defendant had opened five AUTO SHACK stores and had spent approximately $25,000 in promoting the name. By March 1982, when defendant first learned of plaintiff's objections, defendant had opened an additional 55 AUTO SHACK stores in seven states and had spent approximately $1.5 million promoting the name. Throughout the period from July 1979 to March 1982, plaintiff closely monitored the expansion of defendant's business and was aware of defendant's plans to expand to 150 stores by the mid-80's. In addition, during this time plaintiff failed to take legal action against Mr. Scavariel's use of AUTO SHACK, or against other AUTO SHACK stores of which it was aware in Alabama, Florida, Utah, and California.[4] Plaintiff, however, pursued a substantial number of infringement claims between 1976 and 1982 with demand letters that almost always were sent within several months and most often within one month, after the time plaintiff became aware of the offending use.

Plaintiff filed this suit for infringement on April 15, 1982. Defendant moves for summary judgment and argues estoppel by laches. Both parties have filed depositions, answers to interrogatories, affidavits and briefs, and a hearing on the motion was held on October 26, 1983. For the following reasons, the Court grants defendant summary judgment on the basis of laches and accordingly denies plaintiff all relief requested.

## II. Estoppel by Laches

### A. General Requirements

■■■ The defense of estoppel by laches denies relief to a litigant who has been guilty of unreasonable delay in enforcing his rights when that delay results in a prejudicial reliance by the opposing party.[5] *American Home Products Corp. v. Lockwood Manufacturing Co.*, 483 F.2d 1120 (6th Cir.1973); Callman, Unfair Competition, Trademarks & Monopolies § 22.21 (4th Ed). The length of delay necessary to establish laches depends on the circumstances of each case, and especially on the degree of injury and prejudice to the party asserting the defense. *See Fruit Industries v. Bisceglia Brothers*, 101 F.2d 752 (3d Cir.1939) (three year delay held sufficient). The holder of a trademark may not wait to see how successful an alleged infringer's business will be before seeking relief. *Polaroid Corp. v. Polorad Electronics*, 287 F.2d 492 (2d Cir.1961).

Defendant in this case contends that plaintiff's 32 month delay in communicating any objection concerning defendant's use of AUTO SHACK, in addition to plaintiff's longstanding failure to protest Mr. Scavariel's use of the mark, was inexcusable delay upon which defendant relied in expanding its business and spending $1.5

---

**4.** Plaintiff was aware of Auto Shack, Inc. of Fort Lauderdale, Florida, since 1977, but no objection was made until December 1982. Plaintiff has been aware of an Auto Shack store in Granada Hills, California, since early 1981, but no objection had been made as of June 1983. Plaintiff has been aware of an Auto Shack store in Atmore, Alabama, since April 1982, but no objection was made until December 1982. Plaintiff was aware of Auto Shack stores in Provo and Orem, Utah, since October 1978, but no objection was made until March 1979.

**5.** Some courts and commentators include in the definition of laches the innocence of the party asserting the estoppel. Callman, Unfair Competition, Trademarks and Monopolies § 22.24 (4th ed.). This issue, however, concerns the scope of the estoppel rather than its existence. Laches in some instances can estop an accounting for profits made during the delay despite an intentional infringement. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons*, 523 F.2d 1331, 1344 (2d Cir.1975); *San Francisco Association for the Blind v. Industrial Aid for the Blind, Inc.*, 152 F.2d 532 (8th Cir.1946); 2 McCarthy, Trademarks & Unfair Competition § 31.2. If the party seeking the estoppel, however, acted fraudulently or with knowledge of the delaying party's rights, courts will not estop injunctive relief unless the delay amounts to virtual abandonment of the mark. *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614–615 (7th Cir.1965). *See also* discussion in text, *supra*, Part II B.

million in promotions. Defendant contends that had it been made aware of plaintiff's objections in July or August 1979, when very little investment had been made in the mark, that defendant would have chosen a different name to avoid expensive and protracted infringement litigation.

Plaintiff argues that the 32 month delay in notifying defendant was a reasonable amount of time to cautiously and maturely investigate the suspected infringement before provoking a controversy, and that the failure to protest Mr. Scavariel's use of AUTO SHACK is irrelevant to this action. In addition, plaintiff contends that defendant did not detrimentally rely on plaintiff's delay because defendant was aware of the RADIO SHACK mark, was aware of confusion between the two marks early in the expansion process, and would have expanded and promoted AUTO SHACK even if plaintiff had objected in August 1979. Plaintiff concludes that the issues of delay and reliance at the very least remain in dispute, which makes this action inappropriate for summary judgment.

■■■ The Court finds that plaintiff's delay in this case was inexcusable and unreasonable. No excuse exists and none was offered to explain plaintiff's failure to at least notify defendant in late 1979 that plaintiff objected to the use of AUTO SHACK, especially since sending timely demand letters is plaintiff's normal practice. Lack of knowledge may be an excuse, *Chandon Champagne Corporation v. San Marino Wine Corporation*, 335 F.2d 531 (2d Cir.1964), but plaintiff admits it was fully aware of defendant's use of the mark in July 1979 and even decided to pursue litigation by August 1979. Plaintiff made a half-hearted attempt to offer a "pending litigation" excuse. Courts have held that delays in filing trademark causes of action may be reasonable in cases in which plaintiff is involved in other litigation on the mark. *Electronic Communications, Inc.*

*v. Electronic Components For Industry Co.*, 443 F.2d 487, 490 (8th Cir.1971). Other litigation, however, does not excuse a failure to give prompt warning. In *American Home Products, supra*, an analogous patent case, the Sixth Circuit Court of Appeals rejected the "other litigation" explanation as an excuse for plaintiff's delay in notifying defendant that plaintiff intended to sue. The court in *American Home Products* stated that if plaintiff had intended to press its claims against defendant following other litigation, it surely would have found time to send defendant a simple letter to that effect.[6]

■■■ The allowable period of time during which an injured party may rest upon his rights varies with the circumstances of each case, and is intertwined with the degree of detrimental reliance exercised by defendant. *Yellow Cab Transit Company v. Louisville Taxicab & Transfer Company*, 147 F.2d 407, 415 (6th Cir.1945); *see also* Callman, *supra* at § 22.25. Although it contends that defendant's detrimental reliance is a material issue that remains in dispute, plaintiff has submitted no evidence to counter defendant's testimony that it would not have retained the AUTO SHACK name had plaintiff objected in August 1979 before defendant expanded its business and spent $1.5 million in promotions. If a plaintiff's failure to pursue its rights causes a defendant to rely by building and expanding a valuable business around a trademark, then sufficient detrimental reliance exists for estoppel by laches. *Hylo Company v. Jean Patou, Inc.*, 215 F.2d 282 (C.C.P.A.1954); *see also* McCarthy, *supra* at § 31:5. In addition, defendant submitted examples of names it had chosen and then abandoned when a possibility of infringement was found. That a defendant was aware of the existence of RADIO SHACK is not sufficient for an inference that defendant knew plaintiff would object

---

6. The court explained that
This notification is important, partly because it puts the accused infringer on notice that a suit will be filed against him on this issue, and partly because it permits him to bring a declaratory judgment action if the delay in waiting for a judicial determination would be a burden upon his proposed operation.
483 F.2d at 1123.

to the use of AUTO SHACK. Mere conclusory allegations will not suffice to defeat a motion for summary judgment. Plaintiff must set forth specific facts showing a genuine issue for trial. *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

■ Considering plaintiff's failure to notify defendant of any objections, the 32 month delay that directly concerns defendant is completely inexcusable and resulted in sufficient detrimental reliance for estoppel by laches. *See Simon Says Enterprises, Inc. v. Milton Bradley Company*, 522 F.Supp. 986 (S.D.N.Y.1981) (two year delay); *Fruit Industries v. Bisceglia Brothers, supra*, 101 F.2d at 754 (three year delay). Moreover, the Court finds that defendant also reasonably relied upon plaintiff's failure to object to Mr. Scavariel's use of AUTO SHACK for three years prior to defendant's adoption of the name. Plaintiff cites *Pepsico, Inc. v. Grapette Company*, 416 F.2d 285 (8th Cir.1969), to support its argument that defendant may not "tack on" plaintiff's delay in objecting to Mr. Scavariel because defendant obtained only an "assignment in gross" from Mr. Scavariel. The court in *Pepsico* held that where defendant soft drink bottler was assigned a trademark but did not acquire any formula or process used in making the assignor's cola, or any good will associated with the mark, and defendant used the mark on a different type of beverage, defendant had no standing to raise the defense of laches based on plaintiff's failure to object to the assignor's use of the mark. Defendant in this case contends that Mr. Scavariel's permission to use the AUTO SHACK mark was given not as an assignment in gross, but as a covenant not to sue. Whatever the label attached to the transfer, and without passing on its scope or validity, defendant's use of Mr. Scavariel's mark easily is distinguishable from the facts of *Pepsico*. Defendant acquired not only a name but a process, marketing concept, supplier network, and management system from Mr. Scavariel. In addition, defendant used the mark on the very same product as did Mr.

Scavariel. Defendant's use of Mr. Scavariel's mark comes as close to being an acquisition of an existing business as is possible without actually consummating a merger. Thus, a three year delay added to a 32 month delay makes defendant's reliance upon plaintiff's inaction all the more reasonable and makes plaintiff's delay all the more inexcusable.

## B. Relief Barred

■ The United States Supreme Court specifically made laches available as an equitable defense barring injunctive relief in *United Drug v. Rectanus Company*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918). *See also Prudential Insurance Company v. Gibraltar Financial Corp.*, 694 F.2d 1150 (9th Cir.1982). Once the general elements of estoppel by laches are established, the decision of what, if any, relief is barred by the laches depends on the circumstances of each case, *Yellow Cab Transit Company v. Louisville Taxicab & Transfer Company, supra*, and usually includes a consideration of defendant's guilt or innocence and the injury to defendant or to the public resulting from the granting or barring of relief. *Standard Oil Company v. Standard Oil Company*, 141 F.Supp. 876 (D.C.Wyo.1956), *aff'd* 252 F.2d 65 (10th Cir.1958); Callman, *supra* § 22.23. Plaintiff in this case argues that defendant's good faith in adopting the AUTO SHACK mark is in dispute, that the public would be harmed by the barring of injunctive relief in this case, and that the Court in its decision also should consider the factors enumerated in *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*, 293 F.Supp. 892 (S.D.N.Y. 1968), *aff'd* 433 F.2d 686 (2d Cir.1970), *cert. denied* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). The court in *Zeiss* stated that the decision to bar injunctive relief depends on a balancing in each case of the interests and equities of the parties, including the strength and value of the mark asserted, plaintiff's diligence in enforcing the mark, the harm to plaintiff, the good faith of defendant, the degree of direct competition between plaintiff and de-

fendant, the harm to defendant, and the harm to the public. 293 F.Supp. at 917.

 Defendant has demonstrated its good faith adoption of the AUTO SHACK mark and plaintiff has countered with nothing more than conclusory allegations of bad faith that fail to demonstrate a genuine issue for trial. *See First National Bank of Arizona v. Cities Service Company, supra.* No dispute exists that defendant adopted the mark from Mr. Scavariel because of the close cooperation and hope for future merger between the two. Also, defendant offered proof of its specific intent to choose a non-infringing mark in its rejection of the names AUTO MART and AUTO WISE. Plaintiff alleges that defendant's awareness of the existence of RADIO SHACK and defendant's experience with early confusion between the two marks evidences bad faith in defendant's adoption and continued use of the mark. Mere knowledge of another's use of a similar mark, however, does not establish bad faith. Rather, proof of an intent to deceive or confuse the public is necessary to defeat a bar by laches to injunctive relief. *Armco, Inc. v. Armco Burglar Alarm Company,* 693 F.2d 1155, 1159 n. 7 (5th Cir.1982). In addition, the few instances of early confusion that plaintiff submits as evidence of bad faith are at best marginally probative of confusion and in no way support an inference of intent to deceive.[7]

Those few instances of initial confusion cited in affidavit or deposition do not support an inference of public harm if defendant is allowed to continue its use of the AUTO SHACK mark, nor does this create an issue of controlling fact necessitating a trial. No statistical surveys were offered to show substantial customer deception or confusion by the concurrent existence of RADIO SHACK and AUTO SHACK. No instances were documented in which a customer came into an AUTO SHACK thinking he was in a RADIO SHACK, bought an item of the type sold at RADIO SHACK, and left without ever discovering his mistake. *See Jewel Companies, Inc. v. The Westhall Company,* 413 F.Supp. 994 (N.D. Ohio 1976). This lack of evidence is particularly glaring in light of the existence since 1976 of both a RADIO SHACK and an AUTO SHACK in the same Phoenix shopping center. Evidence of public harm or confusion surely would have surfaced in that side-by-side situation. Moreover, plaintiff has not submitted any evidence that the product overlap between the two stores is so substantial that it would result in customer confusion. Plaintiff simply alleges that the product overlap concerns a material portion of its business. Once again, a conclusory allegation will not create a genuine issue for trial that will defeat a summary judgment motion.

 The Court does not accept as a rule of law plaintiff's contention that the factors enumerated in the *Zeiss* case are the precise factors to be balanced in every estoppel-by-laches case, nor that each of these issues must be undisputed before summary judgment may be had on the basis of laches. Equitable remedies require a balancing of interests, but the precise factors that are material in each case vary with the circumstances. Nevertheless, a consideration of each of the *Zeiss* factors in this case only supports the court's conclusion that laches should bar injunctive as well as monetary relief. SHACK, a common word used for its dictionary meaning, is a weak mark. The mark is not "so arbitrary, fanciful or unique that it has come to symbolize the source of origin." *WLWC Centers, Inc. v. Winners Corp.,* 563 F.Supp. 717 (M.D. Tenn.1983). The large number of other users of the mark "SHACK" further demonstrates its weakness. *See Atlas Supply Company v. Atlas Brake Shops, Inc.,* 360

---

**7.** Plaintiff contends that instances in which defendant learned of customer confusion, such as customers thinking they were in a RADIO SHACK or asking for a product carried by RADIO SHACK and not by AUTO SHACK, support

F.2d 16 (6th Cir.1966).[8] The weakness of the mark is especially pertinent to the length of plaintiff's delay in objecting to its use because more and prompter diligence is required to protect a weak mark. *See Hindu Incense v. Meadows*, 692 F.2d 1048 (6th Cir.1982). Plaintiff in this case has not exhibited noticeable diligence in enforcing its mark. Until this litigation was well under way plaintiff neglected to send even a demand letter to Mr. Scavariel, who has used the SHACK mark since 1976, or to the users of CYCLE SHACK and VAN SHACK. In addition, the promptness with which the evidence shows plaintiff sent demand letters to other alleged infringers further emphasizes plaintiff's lack of diligence in objecting to defendant's use of AUTO SHACK. Plaintiff has submitted no evidence of harm resulting from defendant's use of AUTO SHACK. In fact, the reasonable inference from plaintiff's failure to object to Mr. Scavariel's use of AUTO SHACK is that no harm resulted. As the Court discussed previously, plaintiff has failed to put at issue either defendant's good faith or its detrimental reliance on plaintiff's silence. The harm to defendant if an injunction issues is obvious. Not only would defendant lose the good will built up over the last four years and possibly lose the opportunity for a future merger with Mr. Scavariel, but it will be forced to spend additional monies changing signage and promoting a new name. Also, the Court concluded previously that no evidence exists that the public will suffer any great harm by defendant's continued use of the AUTO SHACK mark.

Finally, the Court finds this case unusually appropriate for summary judgment disposition over and above its lack of disputed factual issues because it is a non-jury case that, if litigated, would result in a complex, protracted, and very expensive trial.

Thus, after considering the interests and equities of the parties and the public, the Court grants summary judgment to defendant on the basis of estoppel by laches. Accordingly, all relief requested by plaintiff is denied.

---

an inference of intentional infringement and bad faith use of the mark.

**8.** In response to plaintiff's interrogatory No. 1, defendant produced 1006 examples of companies and individuals not related to plaintiff that use the word "SHACK" or derivatives thereof in commerce, either alone or in combination with other words and letters. Plaintiff did not dispute this response.